RUSSELLVILLE WATER COMPANY, INC. *v.*
ARKANSAS PUBLIC SERVICE COMMISSION

80-131                                                606 S.W. 2d 552
Supreme Court of Arkansas
Opinion delivered October 6, 1980
Rehearing denied November 17, 1980

*House, Holmes & Jewell*, by: *E. B. Dillon, Jr.*, for appellant and cross-appellee.

*Jeff Broadwater*, for appellee and cross-appellant.

FRANK HOLT, Justice. In October, 1978, the Russellville Water Co., Inc., requested the Arkansas Public Service Commission's approval of increased rates and charges in the amount of $397,807. In September, 1979, the Commission found that the Company was entitled to an increase of only $133,294. Upon the Commission's denial of the Company's petition for a rehearing, except as to one issue, the Company filed in the Pulaski Circuit Court a petition to review the Commission's orders.

The circuit court reversed the Commission on its failure to include in the Company's rate base $422,293 for construction work in progress (CWIP). However, the court affirmed the Commission on the issue of tax computation and also on the Commission's refusal to make a downward revenue adjustment for the loss of a large industrial customer during the test year. The Company appeals from the court's affirmance of the Commission on the last two mentioned issues. The Commission cross-appeals from the court's reversal as to the CWIP issue.

We first consider and agree with the Company's contention that the Commission erred in the method used to compute income taxes and tax-related deductions of certain extraordinary deferred expenses. A public utility's taxes are a proper item to include in its operating expenses which the utility is entitled to recover from its customers. *Georgia Railway & Power Co.* v. *Railroad Commission*, 262 U.S. 625, 43 S.Ct. 680, 67 L.Ed. 1144 (1923). Here the test period chosen by the Company and used by it and the Commission was June 30, 1977, to June 30, 1978. During this year appellant had several unusually high and nonrecurring annual expenses which it was able to claim as deductions for income tax purposes during the taxable year. These nontypical annual expenses, totaling $100,954, consisted of rate case expenditures, a depreciation study, tank painting, a settling basin, and a management audit. The amount of these underlying expenses was amortized or normalized by the Commission over several years. To this the Company does not object. It does, however, object to the Commission's treatment of the tax related deductions on these expenditures; i.e., the Commission's refusal to similarly amortize or normalize the tax

credits generated by these expenses. The extraordinary expenses and tax deductions thereon during the test year resulted in the Company's having a negative tax liability of several thousand dollars for that taxable year. The savings to the Company in taxes, $48,456, was deducted by the Commission in its entirety from the test year expenses, rather than being amortized, for the purpose of determining the test year expenses to be recovered in the new rates. The Commission based the Company's tax liability during the test year on the amount of taxes actually paid by the Company for the taxable year. The Commission's position is that normalizing the tax liabilities, as it did the underlying expenses, would lower the test year credits which would result in higher test year taxes and greater operating expenses passed on to the consumers; the actual amount of taxes paid during the test year is a reasonable index to future tax liabilities; and although the Company's future tax liabilities could be more than that actually paid during the test year, it is impossible to know to what extent. The Company, however, contends the test year tax credits or savings generated by these extraordinary nonrecurring expenses should have been normalized (spread over the same period of years) as were these underlying expenses, rather than being used by the Commission as an indication of future tax liability. Further, these nonrecurring deferred expenses used for computing the tax deductions will not be available in the future for tax purposes or benefits and, thus, the Company will incur a greater future tax liability than that provided for in the rates. Also, the actual tax saved or negative tax during the year as a result of deductions for the extraordinary expenses during that time is not a reasonable index to potential future tax liabilities. The result of the negative taxes during the test year, it argues, will be a revenue shortfall in the years following the test year, because no provision has been made in the rate base for the increased taxes in those years; and a basic regulatory principle requires that extraordinary expenses, which properly are normalized as here, should also require normalization of tax savings resulting from these tax deductions during the test year. In other words, a tax refund or savings during a test year, like extraordinary expenses, is non-representative of a test year. Therefore, the Commission's action in normalizing the abnormal expenses and refusing to similarly normalize the result-

ing tax deductions is inconsistent and unreasonable. In effect the Commission is properly allowing 1/5th (on a 5 year amortization) of the unusual expenses incurred during the test year for rate making purposes and improperly charging appellant with 100% of the tax deductions.

This court's scope of review of an order of the Commission was recently discussed in *Southwestern Bell Telephone Company* v. *Arkansas Public Service Comm'n*, 267 Ark. 550, 593 S.W. 2d 434 (1979). Pursuant to Ark. Stat. Ann. § 73-229.1 (Repl. 1979), the courts can only determine whether (1) the Commission's findings as to the facts are supported by substantial evidence; (2) the Commission has regularly pursued its authority; and (2a) the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or the State of Arkansas. It is only the findings of fact that are tested by the standard of substantial evidence, which is a question of law. The courts may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. However, it is for the courts to say whether there has been an arbitrary or unwarranted abuse of discretion, even though considerable judicial restraint should be observed in finding such an abuse. The question of reasonableness of the Commission's actions relates only to its findings of fact and to a determination of whether its action was arbitrary.

Here it is undisputed that the amortized expenses were unusual and not the type which occur annually. On cross-examination, one of the Commission's staff witnesses recognized "there is an argument that says that's one way to do it," referring to treating the taxes and the expenses the same, amortizing both. In computing the income tax and tax benefits he used "some rather significant and unusual expenses in 1978," which reduced taxes and expenses and therefore revenue requirements. He agreed that if those expenditures did not occur in the future, it would be impossible for the tax benefit to reoccur. He continued, "[Y]ou know, this is just the way the numbers fall. If this Commission allows the normalization of deferrals, due to excess depreciations and does not allow normalization for any other expenses, well, it just fell that way."

In *AP&L* v. *Ark. Publ. Service Comm'n*, 261 Ark. 184, 546 S.W. 2d 720 (1977), the Commission had excluded construction work in progress from the rate base. However, it included the tax benefits associated with interest on the funds invested in this construction work in progress for rate-making purposes. We held there was no substantial evidence in the record to support the Commission's failure to exclude, for rate-making purposes, these tax benefits. We noted that the result of the Commission's action was that present customers were not paying any return on the investment of the Company in CWIP and were therefore not contributing revenues needed to cover the cost of providing service. In so holding we quoted with approval from *Pennsylvania Public Utility Commission* v. *Pennsylvania Electric Company* 1 PUR 4th 272 (Penn. Puc. 1973), in which that Commission agreed with the Company that if present customers are not providing a return on CWIP, which is not included in the rate base, they should not receive the tax benefit of the reduced income taxes resulting from such construction. Here, by the same reasoning, if the Company is not receiving the benefit of the entire amount of expenses each year, neither should it have charged against its expenses the entire amount of the tax deductions generated by these expenses. In the circumstances, we hold the Commission's normalizing or amortizing the extraordinary expenses over a period of years and not similarly treating the tax benefits or savings generated by these expenses to be inconsistent, unreasonable and arbitrary. We therefore reverse the trial court on this issue.

We next consider the Company's contention that the Commission erred in refusing to make an adjustment to test year revenues related to the permanent loss of revenues from a large industrial customer. The Company requested the Commission to make a downward adjustment on its test period revenues to reflect the loss of revenues from a large industrial customer whose facilities suffered a loss by fire. There were no plans to rebuild. During approximately the first half of the test year, the Company sold this customer 57,-786,000 gallons of water. Following the loss, the level of consumption was only 7,598,000. Based on these figures, the requested adjustment was in the amount of $18,547. This adjustment is contrary to the Commission's policy which is to

adjust revenues for changes in consumption by entire classes of users. To single out one customer's consumption is improper, impracticable, and is an imprecise criterion. Here there is no evidence that the entire class of industrial customers experienced a decline in water use. The evidence shows, however, that the Company's revenues increased from 1977 to 1978. Thus, it appears that the decreased sales to the one industrial customer during the test year were offset by increased sales elsewhere. It appears the Commission's policy, in focusing on changes in classes of customers rather than individual customers, follows traditional regulatory procedure. The Company cites no authority to the contrary. In the circumstances, we hold, as did the trial court, that the commission's methodology is not arbitrary nor an unwarranted abuse of discretion.

By cross-appeal, the Commission contends that the trial court erred in reversing its decision to exclude from the rate base the CWIP not scheduled at the end of the test year (June 30, 1978) for completion within one year of the end of the test year (June 30, 1979). It is undisputed that CWIP, totaling $720,204,[1] was completed within one year (actually 7 months) of the end of the test year. However, the Commission included only $297,911 of this amount in the rate base and, therefore, excluded a balance or $422,293. The Commission contended in the trial court and here, however, that because the disputed items were not posted to the Company's general ledger by June 30, 1978, the end of the test year, it did not have to consider them. The Company successfully argued to the circuit court that under the Commission's guidelines all of the cost of this construction work should have been included. The Commission appeals the court's reversal of its order on this issue, pointing out that traditionally a Public Utility Company's CWIP will not be included in the rate base on which the Company may receive a return. However, the Commission has modified its policy regarding treatment of CWIP and now includes it in the rate base if it is scheduled in the Company's records and posted to the general ledger at the end of the test year to go into operation within the next twelve months.

---

[1]This is the cost on the Company's books as of December, 1978. This is $48,579 in excess of the estimated $671,625 used in the original application.

The trial court found that the CWIP during the base year was completed when the Commission's staff made its audit (December, 1978) of the Company and that verification of the costs of the work were readily available to the examiner; the costs were of such magnitude that it would necessarily affect the rate to be determined; the finished work products were immediately utilized in furnishing water to current consumers; and the Commission ignored this undisputed evidence and assigned the construction costs entirely to subsequent consumers. The court rejected the argument that verification was too burdensome; the data was available at the time of the audit but not inspected merely because it had not been posted on the Company's ledger books by June 30, 1978, the cutoff date of the test year. The trial court held this was arbitrary and unreasonable.

We agree with the circuit court's view. The Commission had notice, by the Company's application, that the utility was including these items in its CWIP which is planned to complete by June 30, 1979, or one year following the test year. The Commission's staff, at the time of the audit, had available to it, at its request, a list of these pertinent work orders, subject to verification by ledger cards and source documents. In other words, $720,204 of plant facilities were completed and serving the public at the time of the December, 1978, audit or the March, 1979, hearing, or well within the 12 months following the test year.

Although the Commission has wide discretion, we also said in *Southwestern Bell* v. *Arkansas PSC, supra*, that "the Commission should consider complete and accurate information with respect to a later period of time, when available, as a check on the continuing validity of the test year experience in a period of rapid change." In the circumstances here, the Commission's failure to examine and consider these available items for inclusion in the rate base is unjustified. Therefore, we affirm the circuit court on the cross-appeal.

Affirmed in part and reversed in part on direct appeal. Affirmed on cross-appeal.