Radcliffe KILLAM, et al., Appellants and Cross-Appellees
*v.* TEXAS OIL & GAS CORP., et al., Appellees and
Cross-Appellants *v.* Joshua S. Cosden, et al., Cross-
Appellants.

90-70                                                   798 S.W.2d 419

Supreme Court of Arkansas
Opinion delivered November 5, 1990

*Pryor, Barry, Smith & Karber*, by: *John D. Alford*, for appellants and cross-appellees.

*Hardin, Jesson & Dawson*, by: *Bradley D. Jesson*, for appellees and cross-appellants Texas Oil & Gas Corp. and TXO Production Company.

*Warner and Smith*, by: *P.K. Holmes III*, for appellee and cross-appellant Thomas C. Mueller.

*Peel and Eddy*, by: *David L. Eddy*, for cross-appellants Joshua S. Cosden, et al.

DALE PRICE, Justice. This case concerns the mineral rights to 280 acres of land in Pope County. A one-half interest in the mineral rights is owned by an individual that is not a party to this case and, therefore, his interest will not be discussed. The other one-half interest is the subject of a lawsuit brought by the Killam family, the appellants herein. In the lawsuit, the Killams alleged that the Cosden family wrongfully executed mineral leases on the 280 acres to Texas Oil and Gas Company/TXO Production (hereafter TXO) and Robert Mueller, despite the fact that the Killams were the rightful owners of the mineral rights. The Killams asked the chancellor to confirm title in them and to assess damages against TXO and Mueller for trespass.

The chancellor declared that the Killams, not the Cosdens, owned the disputed mineral interest. The Cosdens appeal from that ruling. The chancellor also found that TXO and Mueller were trespassers on the Killam property because they leased from the Cosdens while having notice of the Killams' claim. Mueller and TXO appeal from that ruling. Finally, the chancellor awarded damages to the Killams against TXO and Mueller in the form of back royalties. The Killams appeal the damage award, claiming the "working interest" measure rather than the royalty measure should have been used.

The facts show that the White River Royalty Company, record owner of the mineral rights since 1929, conveyed the same rights to the Cosdens, O. W. Killam and L. O. McMillan. The Cosdens promptly recorded their 1956 conveyance; the Killams, after acquiring McMillan's interest, did not record until 1985, though their 1943 conveyance was first in time. In 1981, Mueller

and TXO leased the mineral rights from the Cosdens and drilled wells on the land. The Killams discovered the wells in 1984 and filed suit in 1985. They claimed below, as they do on appeal, that even though the records did not reflect the 1943 conveyance to the Killams, TXO and Mueller had actual notice or constructive notice and knew or should have known that the Killams had an interest in the mineral rights.

The history of the conveyances to the Cosdens and the Killams shows that in 1943, Eleanor Cosden, president of White River Royalty Company, signed a deed conveying the mineral interest to two men: L. O. McMillan and O. W. Killam. This was the deed that went unrecorded until 1985. In 1944, McMillan conveyed his interest to Killam, giving Killam the entire one-half interest. This deed was duly recorded. The appellants are O. W. Killam's successors in interest.

The Cosdens acquired their purported interest in the mineral rights when White River Royalty was dissolved in 1956. Company assets were distributed 51 % to Eleanor Cosden and 49 % to others in the Cosden family. This conveyance was recorded in 1958. Among the assets which the company distributed were the mineral rights in the 280 acres. Over the years, various percentages of the Cosden interest passed through assignment or inheritance. The Cosdens also leased the mineral rights on occasion. These transactions were all duly recorded.

Mueller and TXO entered the picture in 1980-1981. They were interested in leasing the mineral rights on the 280 acres and began a title search to determine from whom the leases should be obtained. The county records at that time showed the conveyance from White River to the Cosdens and the various assignments, devises and leases exercised by the Cosdens. The deed from McMillan to Killam was set forth in a title opinion given them by their title attorney, Lawrence Morgan. Although Mr. Morgan called the deed a "wild deed," he set forth in an advisory that:

Abstract page No. 74 shows a 1944 mineral deed from L. O. McMillan et ux. to O. W. Killam; neither is mentioned elsewhere in the abstract; the deed purports to convey ¼ minerals in these lands and the SE/4 NW/4 of the same section; they probably had a void tax deed, as the

Examiner knows from examining other titles that these men frequently purchased tax titles.

By deposition, Mr. Morgan also testified that the payment of taxes and recording of such payments by the county assessor would constitute notice if it appeared in the records. The payment of taxes by the Killams was duly recorded. Mueller and TXO had notice of the presence of the 1944 deed from McMillan to Killam. There was no recorded instrument showing title going into McMillan, and no conveyances or any other recorded activity coming out of Killam over the 37-year period. Since the record showed ownership passing from White River to the Cosdens, Mueller and TXO disregarded the "wild deed," obtained the leases from the Cosdens and made no further inquiry.

We will first discuss the issues raised by Mueller and TXO's cross-appeal. They argue they were bona fide purchasers without notice of the Killams' interest; therefore, they were not trespassers on the Killams' property. This argument is based on two theories: (1) the Killams, by waiting over 40 years to record their deed, are prevented by the equitable doctrines of laches and estoppel from now asserting their interest in the minerals; and (2) the provisions of Ark. Code Ann. § 14-15-404 (1987) give TXO and Mueller a superior claim to the minerals.

Although laches and estoppel defenses were asserted in the parties' pleadings, they were never brought to the chancellor's attention for a ruling. In *Britton* v. *Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987), which was also a chancery case, we said that even though the defense of laches was raised in the pleadings, failure to obtain a ruling from the chancellor precluded our consideration of the matter on appeal.

In determining that Mueller and TXO had sufficient notice so as not to be innocent purchasers of the leases, the chancellor specifically found as follows:

> 5. As to the claim of TXO that its Leases taken in February of 1981 from the Cosden Group made it a bona fide purchaser for value without notice, the Court finds that TXO had sufficient notice of the Plaintiff's interest so as to not be an innocent purchaser of the Oil and Gas Leases taken from the Cosden Group. The sufficient notice

to the Defendant, TXO, is based on the following:

(1) The 1944 recording of the Deed from L. O. McMillan to O. W. Killam conveying an undivided one-fourth (1/4th) interest in the subject property.
(2) The abstracts prepared for the Defendant, TXO, which were used in the preparation of the title opinion prepared by Lawrence Morgan.
(3) The title opinion prepared by Lawrence Morgan.
(4) The tax assessment and payment information noted in the Abstracts and on file with the tax assessor's office of Pope County, Arkansas.
(5) The previous dealings between the Plaintiffs and TXO in other counties and the fact that the Killam family had been active in the oil and gas business.

6. As to the claim of Thomas C. Mueller that as to the Leases taken from the Cosden Group in 1981 that he is a bona fide purchaser for value without notice, the Court finds that Mueller had sufficient notice of the interest of the Plaintiffs such that he is not an innocent purchaser of the Oil and Gas Leases. The sufficient notice is based on the following:

(1) The 1944 recording of the Deed from McMillan to Killam conveying an undivided one-fourth (1/4) interest in the subject property.
(2) The title opinion prepared by Lawrence Morgan.
(3) The tax assessments and payment information noted in the abstracts and on file with the tax assessor's office of Pope County, Arkansas.
(4) The fact that Mueller is active in the oil and gas business.

█ Ark. Code Ann. § 14-15-404(b) (1987) provides that if an instrument affecting title to real property is not recorded in the clerk's office of the county where the real estate is situated, then it shall not be valid against a subsequent purchaser of the real estate unless that purchaser has actual notice of the prior interest. It is undisputed that the 1943 deed from White River to McMillan and Killam was not recorded. Therefore, it is ineffective against subsequent purchasers Mueller and TXO unless Mueller and TXO had actual notice of the Killams' interest.

■ The Killams contend that TXO and Mueller had either actual notice of the Killam interest (notice in fact), or constructive notice, meaning they were aware of enough facts that they were obligated to pursue and inquire into the possibility of Killam ownership. The burden of proving such notice is on the Killams. *Smith* v. *Olin Industries, Inc.*, 224 Ark. 606, 275 S.W.2d 439 (1955); *Story* v. *Grayson*, 208 Ark. 1029, 185 S.W.2d 287 (1945) (where a purchaser shows payment of valuable consideration in good faith, the burden of showing he purchased with notice is on the party alleging it).

■ Mueller and TXO did have knowledge of other matters which, as the Killams claim, should have caused them to inquire beyond the entries in the county records. This is the type of notice we spoke of in *Massey* v. *Wynne*, 302 Ark. 589, 791 S.W.2d 368 (1990), when we said that a subsequent purchaser will be deemed to have actual notice of a prior interest in the property if he is aware of such facts and circumstances as would put a person of ordinary intelligence and prudence on such inquiry that, if diligently pursued, would lead to knowledge of these prior interests. This type of notice must be enough to excite attention or put a party on guard to call for an inquiry. *Henderson* v. *Ozan Lumber Co.*, 216 Ark. 39, 224 S.W.2d 30 (1949).

At the time TXO and Mueller executed the leases and paid consideration therefor, they were aware of the existence of the 1944 "wild deed" from McMillan to Killam. In addition, the court held that, because a search in the records of the county assessor's office would have showed the Killams assessing taxes on the minerals since 1978, TXO and Mueller should be charged with that knowledge also.

The Killams further contend that the language contained in the "wild deed" should have put TXO and Mueller on notice that the Killams had a legitimate, though unrecorded, interest in the minerals. The pertinent language refers to "certain undivided interests" in the property which have "heretofore been acquired by L. O. McMillan, grantor, and O. W. Killam, grantee." This language indicates that, at some previous time, McMillan and Killam had acquired these mineral interests.

We find the court of appeals' decision in *Donahou* v. *Forehand*, 14 Ark. App. 281, 687 S.W.2d 864 (1985), to be

instructive here. The court found that the purchaser did not take without notice, in part because of the existence of a wild deed.

The Killams also claim that, had Mueller and TXO searched the county tax assessment records, they would have found that the Killams had assessed on the mineral rights since 1978. The Killams cite no case holding that assessment records are notice to a third person. However, the testimony of Lawrence Morgan, noted previously, established that the tax assessments and payments duly recorded would be notice. This should have been sufficient to excite attention or put Mueller and TXO on guard to call for an inquiry.

■ We review chancery cases *de novo, Lynch* v. *Brunner*, 294 Ark. 515, 745 S.W.2d 115 (1988), but will not reverse a chancellor's finding of fact unless clearly erroneous. ARCP Rule 52(a).

■ We cannot say the chancellor's finding that Mueller and TXO had sufficient notice was clearly erroneous.

■ We will next discuss the issues raised by the Killams in their direct appeal. In awarding damages to the Killams, the chancellor found that the trespass by Mueller and TXO was in good faith. Under that circumstance, the proper measure of damages is the value of the minerals in place in the ground. *Ward* v. *Spadra Coal Co.*, 168 Ark. 853, 272 S.W. 353 (1925). This means the damages may be measured in either of two ways: the amount that could have been obtained by the Killams had they leased the mineral rights (royalty measure) or the profit that could have been obtained by the Killams had they drilled the wells themselves (working interest measure). The difference in the two is substantial. The royalty measure would award the Killams just over $244,000: the working interest method, over $1 million. The chancellor awarded royalty damages. The Killams contend that, because they possess the capability of drilling and operating a well, the working interest method should have been used. They rely on *National Lead Co.* v. *Magnet Cove Barium Corp.*, 231 F. Supp. 208 (W.D. Ark. 1964), a case in which the federal court set forth the types of damages awarded for trespass. The court discussed the "mild" rule as follows:

Within the framework of the mild measure, there are

two different guidelines to determine the in-place value of ore: first, the royalty value whereby the injured party is allowed as damages an amount equivalent to the value of the privilege of mining and removing the minerals; second, another application of the mild rule allows the injured party to recover the value of the minerals after extraction less a credit to the trespasser of its production costs. The effect of allowing the royalty method as damages is not to punish the nonwilful trespasser, but to compensate the injured party for being deprived of the possibility of extracting the minerals. Alternatively, allowing the injured party to recover the enhanced value of the converted minerals with a deduction in favor of the trespasser for the cost of mining them will also compensate for being deprived of the right of mining the minerals and developing them, while preventing the trespasser from profiting from his wrongdoing. When the royalty method is used in applying the in-place measure of damages, the question of allowance to the trespasser of credit for his expenses in producing the minerals is not reached.

The chancellor's use of the royalty measure to award damages is proper. In *National Lead*, the victim of the trespass was a mining company, active at the time of the trespass in the mining business on the particular piece of land in question. There is no doubt that, in that situation, a royalty award would not have compensated the victim. In contrast, the Killams, prior to 1983, did not participate in the drilling of the wells. The evidence showed that, in situations surrounding the time when the TXO and Mueller leases were taken, the Killams followed the practice of leasing their mineral rights for a royalty interest. While it is clear that the Killams may have had the capability of participating in the drilling of wells, as far as their Arkansas properties were concerned, they simply did not do so during the 1980-1981 period. Therefore, since the purpose of these damages is to adequately compensate the victim of the trespass, the more appropriate method is the royalty method. The evidence indicates that, had the Killams had the opportunity to assert their rights at the time TXO and Mueller took the leases, the Killams would have leased for royalties rather than participated in the drilling.

The next issue raised by the Killams in their direct appeal

concerns prejudgment interest. The chancellor awarded six percent prejudgment interest from the date the suit was filed. The Killams contend that the market rate of interest rather than six percent should have been used and that the interest should have been awarded from the time of the trespass.

■ We have said that, under Ark. Const. art. 19, § 13, when no rate of interest has been agreed upon by the parties, prejudgment interest is limited to six percent. This has been applied in tort damage cases as well as contract cases. *See Wooten* v. *McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981). Accordingly, we disagree with the Killams' contention that it was error to award six percent prejudgment interest rather than the market rate of interest.

■ In *Atlanta Exploration, Inc.* v. *Ethyl Corp.*, 301 Ark. 331, 784 S.W.2d 150 (1990), a case involving trespass, we held that if a method exists for fixing the exact value on the cause of action at the time of the occurrence of the event which gives rise to the cause of action, prejudgment interest should be awarded. Here, the chancellor found that the prejudgment interest should run from the date the action was filed rather than the date of the original trespass. We cannot say this finding was clearly erroneous. The amount of damages was ascertainable from the date of the filing of the suit based upon production records entered into evidence. For other cases measuring prejudgment interest from the time suit was filed see *Little Rock Crate & Basket Co.* v. *Young*, 284 Ark. 295, 681 S.W.2d 388 (1984); *Advance Const. Co.* v. *Delta Asphalt & Conc.*, 263 Ark. 232, 563 S.W.2d 888 (1978).

The chancellor found that the Cosdens were not innocent purchasers, and the cross-appeal is from that ruling. The record clearly shows that the Cosdens settled with the Killams, quitclaiming the mineral interest to them and paying them $15,000 in full compromise of the Killams' suit against them. In addition, the chancellor found that Mueller and TXO (should a judgment be had against them) could not have judgment over against the Cosdens. Therefore, the Cosdens are cleared of liability and any appeal in their own behalf is moot.

■ It is our duty to decide actual controversies. An issue is moot when it has no legal effect on an existing controversy. *Frisby*

v. *Strong School Dist.*, 282 Ark. 81, 666 S.W.2d 391 (1984).

It is possible that the Cosdens appeal at the behest of Mueller and TXO on the theory that, if the Cosdens were innocent purchasers, Mueller and TXO, as lessees, could claim the Cosdens' bona fide status. None of the parties make this argument on appeal, and no authority is presented to support this theory. Even in a chancery case, an appellant waives an argument not presented on appeal. *Cummings* v. *Boyles*, 242 Ark. 923, 415 S.W.2d 571 (1967).

Affirmed on direct and cross-appeal.