AT&T COMMUNICATIONS OF THE SOUTHWEST,
INC. *v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 91-499                                    843 S.W.2d 855

Court of Appeals of Arkansas
En Banc
Opinion delivered December 16, 1992

128

*Wright, Lindsey & Jennings*, for appellant.

*Susan D'Auteuil*, for appellee.

JOHN E. JENNINGS, Judge. This appeal results from a determination by the Arkansas Public Service Commission that customer-owned coinless-operated telephones are not in the public interest and therefore should not be authorized for use by the Commission. Because we find the Commission's actions were arbitrary and capricious and its findings not supported by the evidence, we reverse and remand.

In 1990, Southwestern Bell instituted a tariff filing with the Arkansas Public Service Commission pertaining to the intercon-

nection of customer-owned coinless telephones to the public switch network. After reviewing the pleadings, the Commission determined that the issue of customer-owned coinless telephone service should be considered on a generic basis. The Commission stayed Southwestern Bell's request until after the completion of its generic docket, the purpose of which was stated in Order No. 1:

> The purpose of this Docket is to consider whether or not customer-owned, coinless telephones (telephone instruments for use by the public not requiring coins for operation but using credit cards or other methods of payment or charge to complete a call) are in the public interest and should be authorized for use in the State of Arkansas. This docket is also for the purpose of considering what type of regulation should apply to such telephones if authorized and whether there should be any restriction or limitations on such telephone service if authorized.

In response to Order No. 1, comments were filed by Southwestern Bell, AT&T Communications of the Southwest, Inc. (AT&T), Intellicall, Inc., Americall Dial 0 Service (Americall), and the staff of the Commission. After a hearing, in which witnesses for these parties testified, the administrative law judge entered Order No. 4, finding that it is not in the public interest to authorize customer-owned coinless telephones, that there is adequate service, and that competition in the area will not yield benefits to the end user. Order No. 4, however, also found that AT&T should be allowed to maintain the coinless sets it currently has in Arkansas. AT&T petitioned for rehearing, and after thirty days passed, the petition was deemed denied.

The Arkansas Public Service Commission has broad discretion in exercising its regulatory authority, *Associated Natural Gas Co.* v. *Arkansas Pub. Serv. Comm'n*, 25 Ark. App. 115, 118, 752 S.W.2d 766, 767 (1988), and courts may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *Russellville Water Co.* v. *Arkansas Pub. Serv. Comm'n*, 270 Ark. 584, 588, 606 S.W.2d 552, 554 (1980). It has often been said that, if an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, or discriminatory, then this court must affirm the Commission's actions.

*Arkansas Elec. Energy Consumers* v. *Arkansas Pub. Serv. Comm'n,* 35 Ark. App. 47, 76, 813 S.W.2d 263, 279 (1991). Nevertheless, it is for the courts to say whether there has been an arbitrary or unwarranted abuse of discretion, even though considerable judicial restraint should be observed in finding such an abuse. *Russellville Water Co.* v. *Arkansas Pub. Serv. Comm'n,* 270 Ark. at 588, 606 S.W.2d at 554. Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis, and something more than mere error is necessary to meet the test. *Woodyard* v. *Arkansas Diversified Ins. Co.,* 268 Ark. 94, 97, 594 S.W.2d 13, 15 (1980). To set aside the Commission's action as arbitrary and capricious, the appellant must prove that the action was a willful and unreasoning action, made without consideration and with a disregard of the facts or circumstances of the case. *Partlow* v. *Arkansas State Police Comm'n,* 271 Ark. 351, 353, 609 S.W.2d 23, 25 (1980). *See also Beverly Enters.-Ark., Inc.* v. *Arkansas Health Servs. Comm'n,* 308 Ark. 221, 230, 824 S.W.2d 363, 367 (1992).

The Commission in Order No. 4 described customer-owned coinless telephones as:

> Coinless pay telephones are telephone instruments located in public or semi-public locations accessible to the general public, business patrons, employees or visitors, and the end user pays for local or toll calls from the instrument on a per call basis. Payment for calls on a coinless pay telephone may be collect, third-party billed or charged to a credit card, either a commercial credit card or a telephone company issued card. Customer-owned coinless pay telephones are those instruments owned and operated by any person or entity other than the local exchange company (LEC) authorized to serve the area where the telephone is located.

Order No. 4 also addressed the factors the Commission must consider in determining whether to authorize customer-owned coinless telephones:

> [T]he Commission must consider whether the services and/or providers comply with Arkansas law and whether the provision of such service is in the public interest. Public

interest considerations include the determination of the potential benefits or detriments of the service to the public in general, the potential impacts on existing services and the need for the services. Benefits come in the form of increased services or lower rates and detriments may be increased rates or loss of services to certain areas or ratepayers.

Order No. 4 went on to state that the "ultimate issue in this proceeding. . .is whether or not competition in the pay telephone market is beneficial to the public, regardless of the method of payment." The Commission concluded that competition in the customer-owned coinless telephone market would not yield benefits to the customer and therefore should not be authorized.

AT&T contends on appeal that the substantial evidence supported a finding that customer-owned coinless telephones are in the public interest and that Order No. 4 of the Commission is arbitrary and capricious. The question on review of an administrative board's decision, however, is not whether the evidence would have supported a contrary finding but whether it supports the finding that was made. *Fontana v. Gunter*, 11 Ark. App. 214, 216, 669 S.W.2d 487, 488 (1984). Judicial inquiry terminates if the action of the Commission is supported by substantial evidence and its action is not unjust, unreasonable, unlawful, or discriminatory. *Southwestern Bell Tel. Co.* v. *Arkansas Pub. Serv. Comm'n*, 24 Ark. App. 142, 144, 751 S.W.2d 8, 9 (1988). In order to establish an absence of substantial evidence, the aggrieved party must show that the proof before the Commission was so nearly undisputed that fair-minded persons could not reach its conclusion. *Beverly Enters.-Ark., Inc.* v. *Arkansas Health Servs. Comm'n*, 308 Ark. 221, 226, 824 S.W.2d 363 (1992). The court must not look at whether the conclusions of the Commission are supported by substantial evidence, but whether its findings of fact are so supported. *Arkansas Pub. Serv. Comm'n v. Continental Tel. Co.*, 262 Ark. 821, 829, 561 S.W.2d 645, 649 (1978).

In concluding that competition in the customer-owned coinless telephone market would not yield benefits to the consumer, the Commission found that customer-owned coinless telephones do not offer any benefits to the public that cannot be

offered by the local exchange carriers and that adequate service is available; that customer-owners would not comply with the regulations of the Commission; that competition in the customer-owned coinless telephone market would increase rates to the consumer; and that customer-owned coinless telephone service would not be reliable. Although we acknowledge that this Court must give due regard to the expertise of the Commission, we cannot say the findings of the Commission are supported by substantial evidence or that its decision not to authorize customer-owned coinless telephones is supportable on any rational basis.

The Commission first found that customer-owned coinless telephones do not offer any benefits to the public that cannot be offered by the local exchange carrier and that adequate service is available. In Order No. 4, however, the Commission stated that benefits come in the form of lower rates *or* increased services. Although there was no evidence that competition in the coinless telephone market causes decreased rates to the end users, considerable evidence was introduced regarding the features of customer-owned coinless telephones which increase services to consumers.

AT&T's witness, Dennis Corrigan, testified that many of AT&T's customer-owned coinless telephones offer assistance to both visually-impaired and senior citizens through the use of display screens which show services and usage instructions in larger characters and loud buttons, some adding up to twenty decibels of amplification. He also testified that many of AT&T's customer-owned coinless telephones provide foreign language instruction in an effort to assist non-English-speaking telephone users. Other features AT&T offers which are beneficial to the general public include speakerphone capability, desk-mounted telephones, and dataports for accessing portable computers.

Intellicall stated in its comments that the technological innovations contained in coinless pay telephones make it possible to provide service tailored to the circumstances or conditions of a particular location and to provide new service options to the end users. Intellicall's witnesses states that, besides processing calling-card and collect calls automatically, these telephones offer callers the option of recording a message to be played back if

subsequent automatic attempts to reach the call number fail because the number is busy or not answered. The option of leaving a recorded message, they said, is particularly appropriate for hotels, motels, airport, and other locations where the predominant use of pay telephones is by travelers placing long-distance calls. In addition, they testified these telephones can also be programmed to permit only collect-calling, to block calls to specific numbers, and to limit call duration, features that are particularly needed by prisons and other confinement facilities.

Americall's testimony and comments centered on how its customer-owned coinless telephones would benefit correctional institutions. Larry Norris, who supervises telephone systems in nine correctional facilities in Arkansas, testified that Americall's telephone system would benefit the prison system by cutting down on security risks and freeing guards who presently must escort prisoners to make telephone calls for other duties.

Although most of the testimony regarding the benefits of customer-owned coinless telephones concerned the benefits of a provider's specific telephone, no party disputed that these telephones offer benefits to the public. The Commission staff agreed that customer-owned coinless telephones are in the public interest, stating:

> [S]taff has had the opportunity to experience demonstrations of customer-owned coinless public telephones, as well as to review and study the various comments filed earlier in this docket. Staff has been convinced by the demonstrations and filed initial comments of the other participants that the customer-owned coinless public telephones do provide a public service and, therefore, are in the public interest.

Clearly, customer-owned coinless telephones offer features which increase services to the public; however, except in the area of specific telephone features needed by confinement facilities, there was no evidence that Southwestern Bell's coinless telephones or the coinless telephones of any other local exchange carrier offer these features. Nor was there any evidence before the Commission from which it could have found that adequate service is available. The Commissions' finding that local exchange carriers offer the same benefits as those of customer-

owned coinless telephones and that adequate service is available is not supported by substantial evidence.

We also find that there is no rational basis for the Commission's conclusion that customer-owned coinless telephone providers would be unwilling to comply with Arkansas law. In Order No. 4, the Commission emphasized testimony by Americall's and Intellicall's witnesses to the effect that, in providing customer-owned coinless telephone service, they would also want to provide local exchange service. The Commission noted that it is contrary to current law for anyone other than the local exchange carrier to provide local and intralata service and responded to this testimony in Order No. 4, stating:

> Even though the Commission did not include reconsideration of its prior decisions on local and intralata traffic in this Docket, Americall and Intellicall said that unless customer-owned coinless pay telephones are allowed in these markets, private ownership of these telephones is not feasible. Mr. Stenson did not know whether Americall's telephones were capable of sending local and intralata traffic to the appropriate LEC because Americall does not operate in any jurisdiction where it could not handle this traffic. After consideration of the benefits and detriments of competition in those areas, the Commission adopted its present policies on local and intralata service on the basis that they were in compliance with Arkansas law, in the public interest, and promoted universal telephone service in the state. If customer-owned coinless pay telephones cannot be operated pursuant to these policies and endanger universal service, then the service is not in the public interest.

After reviewing the testimony of these witnesses, we do not find it demonstrates that customer-owned coinless telephone providers would be unwilling to comply with the existing laws and regulations in this area. In fact, the Commission recognized in Order No. 4 that AT&T has been providing customer-owned coinless telephones in compliance with the law and Commission policy:

> The AT&T coinless pay telephones have been in operation for a number of years, providing interlata and interstate

service, and routing intralata and local traffic to the appropriate LEC. Therefore, AT&T's coinless pay telephones do not divert revenues from the LECs. Further, AT&T is an experienced certificated interexchange carrier with a proven record of providing service at tariffed rates and in compliance with the laws and policies governing public utilities in this state.

We also find that the Commission's concern that competition in the customer-owned coinless telephone market would cause increased rates to the consumer is based upon speculation and not upon the evidence. The Commission stated that competition in the customer-owned coinless telephone market would create bidding wars for telephone locations, with the ultimate victim being the captive consumer, who would be forced to pay increased rates in order to cover the commissions. The Commission relied on testimony by Americall's and Intellicall's witnesses that coinless telephone owners could pay a commission to location owners for installing their telephones. From this testimony, the Commission concluded that providers might attempt to recoup the commissions they pay by increasing their rates to consumers.

We acknowledge that any rate could be charged by a provider of a coinless telephone in the absence of regulation by the Commission; however, only Intellicall proposed that customer-owned coinless telephones should not be regulated. In determining whether customer-owned coinless telephones are in the public's interest, the Commission must view them in the context of the appropriate regulatory treatment. Indeed, one of the stated purposes of the generic proceeding was to consider what types of regulations should apply to customer-owned coinless telephones. To consider the merits of customer-owned coinless telephones only in the context of no regulation is arbitrary.

The Commission also quoted from an order of the Florida Public Service Commission which found that competition in the coinless telephone market had not resulted in lower rates to the end user. We note, however, there was no finding that competition had increased rates, nor did the Florida commission question its earlier finding that customer-owned coinless telephones were in the public interest. For the Commission here to

conclude that customer-owned coinless telephones do not offer any benefits to the public merely because there is no evidence that competition in another state has reduced rates to the end user is to ignore the Commission's own statement that "benefits come in the form of *increased services* or lower rates." (Emphasis added.)

In justifying its refusal not to authorize customer-owned coinless telephones, counsel for the Commission, in its brief and in oral argument before this Court, argued that the supervision of customer-owned coinless telephones would create a regulatory nightmare. We cannot consider this argument on appeal, however, because it was not given by the Commission as justification for its decision not to authorize customer-owned coinless telephones, and there is no evidence in the record to support such a finding. Although the Commission may take official notice of facts within its specialized expertise, the notice the Commission takes of such facts must be based on evidence already in the record. *See Colorado Mun. League* v. *Mountain States Tel. and Tel. Co.*, 759 P.2d 40, 45 (1988). Courts may not accept appellate counsel's *post hoc* rationalizations for agency action; an agency's action must be upheld on a basis articulated by the agency itself. *Motor Vehicle Mfr. Ass'n of the United States, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

The Commission in Order No. 4 also implied that customer-owned coinless telephone service would not be reliable. Again this finding by the Commission is based upon speculation and does not provide a rational basis for not authorizing customer-owned coinless telephones. This conclusion apparently results from testimony by Intellicall's witnesses that its telephone sets operate on AC power and, therefore, if a power outage occurs, its telephones are inoperable unless they have a battery back-up, and from testimony that Intellicall sells its coinless sets to customers who then become responsible for any repairs to the telephones they purchase. Nevertheless, there is no evidence in the record describing the number of break-downs customer-owned coinless telephones experience or that customer-owned coinless telephones are subject to more breakdowns than the telephones of local exchange carriers.

Finally, AT&T argues that the Commission acted

arbitrarily and capriciously by allowing it to continue to maintain over 200 customer-owned coinless telephones in Arkansas after finding that customer-owned coinless telephones are not beneficial to the public. Although we do not find this action on the part of the Commission to be arbitrary and capricious, we do find it demonstrates that customer-owned coinless telephones can be operated in compliance with Commission regulation and in a manner not detrimental to the public.

In summary, we hold that the findings on which the Commission relied for holding that it was not in the public interest to authorize customer-owned coinless telephones are not supported by substantial evidence.

Reversed and remanded.

CRACRAFT, C.J., and MAYFIELD, J., dissent.

MELVIN MAYFIELD, Judge, dissenting. I respectfully dissent. The majority has questioned the jurisdiction and right of the Arkansas Public Service Commission to determine whether customer-owned coinless telephones should be authorized for use in Arkansas. Arkansas Code Annotated § 23-2-304(a)(2) (1987) gives the Commission the power to "determine the reasonable, safe, adequate, sufficient service to be observed, furnished, enforced, or employed by a public utility and to fix this service by its order, rule, or regulation." Because the Commission acts in a legislative capacity and not in a judicial one, orders of the Commission are viewed as having the same force and effect as would an enactment of the General Assembly. *Arkansas Elec. Energy Consumers* v. *Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 66-67, 813 S.W.2d 263, 274 (1991). On appeal, we give due regard to the expertise of the Commission. *Id.* at 71, 813 S.W.2d at 277.

The Commission here, acting within its regulatory authority, considered the evidence on the issue of whether competition in the coinless telephone market would be beneficial to the public and, using its expertise, determined that it would not. It is the province of the Commission as trier of fact to assess the credibility of the witnesses, the reliability of their testimony, and the weight to be accorded the evidence before the Commission. *General Tel. Co. of the Southwest* v. *Arkansas Pub. Serv. Comm'n*, 23 Ark.

App. 73, 83, 744 S.W.2d 392, 397 (1988). It is not for the courts to advise the Commission how to discharge its function in arriving at findings of fact or to say whether the Commission has appropriately exercised its discretion. *Southwestern Bell Tel. Co. v. Arkansas Public Service Commission*, 267 Ark. 550, 557, 593 S.W.2d 434, 439 (1980), and courts should not attempt to substitute their judgments for that of administrative agencies. *Department of Human Services v. Berry*, 297 Ark. 607, 609, 764 S.W.2d 437, 438 (1989). A decision of an administrative agency may be supported by substantial evidence even through this court might have reached a different conclusion had we heard the case *de novo* or sat as trier of fact. *Arkansas Elec. Energy Consumers v. Arkansas Pub. Serv. Comm'n*, 35 Ark. App. at 67, 813 S.W.2d at 277.

The majority's opinion concludes that customer-owned coinless telephones are beneficial to the public and should be authorized. In reaching this conclusion, the majority has disregarded our standard of review and has substituted its judgment for that of the Commission. In my view, the issue is much deeper than whether the technological gadgetry of customer-owned coinless telephones is in the public interest. It should be understood that the telephones involved will be accessible to the general public for use but will not be owned by the local exchange company authorized to serve the area where the specific telephone is located. The Commission's order clearly demonstrates that it was concerned with the problems that will obviously exist in the supervision and regulation of the rates and services provided by the myriad owners of — what will actually be — separate little telephone companies. I am not prepared to say that the Commission was wrong in holding that the "supervision" of these telephones "would create a regulatory nightmare."

I would affirm the order of the Commission.

CRACRAFT, C.J., joins in this dissent.