Winston BRYANT, Attorney General *v.*
ARKANSAS PUBLIC SERVICE COMMISSION

CA 93-211                                          871 S.W.2d 414

Court of Appeals of Arkansas
En Banc
Opinion delivered March 2, 1994

*Winston Bryant*, Att'y Gen., by: *Shirley E. Guntharp*, Deputy Att'y Gen., for appellant.

*Lee McCulloch*, for appellee.

JOHN B. ROBBINS, Judge. The Attorney General (AG) appeals a decision of the Arkansas Public Service Commission (Commission), in which the Commission refused to render a finding on the AG's motion to disclose documents that the Commission had placed under seal by protective order. The AG contends that the Commission failed to make a specific factual determination that the documents were not subject to disclosure as required by Ark. Code Ann. § 23-2-316 (1987) and § 23-2-421(a) (1987). We agree and therefore reverse and remand.

Arkansas Power and Light Company (AP&L) and St. Vincent Infirmary Medical Center (St. Vincent) entered into an incentive rate agreement whereby AP&L offered St. Vincent a special rate in return for St. Vincent's agreement to continue to purchase its energy needs from AP&L rather than obtain it from co-generation. The agreement required the approval of the Commission, and in July 1992, AP&L filed an application with the Commission requesting that it approve the incentive rate contract. In

connection with this proceeding, AP&L filed a motion for a protective order of disclosure pertaining to certain exhibits and workpapers provided by St. Vincent. AP&L claimed that these documents were confidential and disclosure of them could harm St. Vincent and requested that disclosure of the confidential information be limited to persons working directly on this Docket. The Commission's staff (Staff) responded to AP&L's motion, stating that it did not object to entry of the protective order but reserving the right to contest it at a future date. The Commission then entered Order No. 1, which granted AP&L's motion for a protective order. Order No. 1 provided:

> On July 13, 1992, Arkansas Power & Light Company (AP&L or Company) and St. Vincent Infirmary Medical Center (St. Vincent) filed in this Docket its Motion For Protective Order Of Non-Disclosure (Motion) pursuant to Ark. Code Ann. Section 23-2-316 and 13.05 of the Commission Rules of Practice and Procedure, requesting that the Commission enter a Protective Order prohibiting any disclosure to the general public . . . . In their Motion, AP&L and St. Vincent's state that the exhibits and workpapers contain proprietary, confidential, and sensitive information that has not been previously disclosed by St. Vincent and has been maintained as confidential by AP&L pursuant to contractual commitment and that the release of this material would damage St. Vincent's competitive position by providing unfair advantage to its competitors. In addition, AP&L and St. Vincent's allege that the public disclosure of the information contained in the exhibits and workpapers may cause security concerns or problems because it contains certain physical descriptions and locations of equipment which is critical to the daily operation of a hospital and to which access is controlled.

> On July 21, 1992, Staff filed its Staff Response To. Motion For Protective Order of Non-Disclosure (Staff Response). Staff stated that it will not be able to review the exhibits and workpapers absent a Protective Order. Staff stated that based upon the representation that the information is proprietary, Staff does not object to the Commission entering a Protective Order for the exhibits and workpapers if Staff is reserved the right to contest at a

future date, upon reasonable notice, AP&L's and St. Vincent's entitlement to a Protective Order for all or portions of the information.

Having considered the matter, it is the finding of the Commission that the Motion For Protective Order For Non-Disclosure filed by Arkansas Power & Light Company and St. Vincent Infirmary Medical Center on July 13, 1992, should be granted subject to the reservation of the right to contest Arkansas Power & Light Company's entitlement to such Protective Order at a later date by Staff.

Subsequent to the entry of Order No. 1, the AG notified the Commission of its intent to participate in the Commission Docket pursuant to Act 39 of 1981. By motion, the AG argued that AP&L and St. Vincent had offered no compelling reasons for shielding the information and that it is in the public interest to make available for public scrutiny the documents from which the public's rates may be set. The AG requested clarification of Commission Order No. 1 and disclosure of the protected information. The Commission then entered Order No. 6, directing all parties who wished to respond to the AG's motion to do so by a certain date and scheduling a hearing on the motion. Arkansas Electric Energy Consumers (AEEC) and Arkansas Gas Consumers (AGC) responded that almost all the information the AG sought had already been disclosed and that the remainder of the information should be kept confidential. AP&L and Staff also responded that the AG's motion should be denied.

At a hearing held on the AG's motion for disclosure, John Talpas, vice president of manufacturing for Great Lakes Chemical Corporation; Neal Jansonius, of AP&L; and Larry Whitt, senior vice president of engineering for St. Vincent's Infirmary, testified as to the necessity of maintaining the protective order. Talpas testified regarding a similar protective order, which had been entered when AP&L and Great Lakes Chemical Corporation sought the Commission's approval of an incentive rate contract. He stated that disclosure to the public of Great Lakes' protected information would have given its competitors valuable insights into Great Lakes' operations and methodology, which would have placed Great Lakes at a distinct disadvantage in competitive bidding. He also testified that he would not have pro-

vided sufficient information to AP&L to allow it to make a co-generation deferral offer if he had known Great Lakes' protected information could be disclosed.

Neal Jansonius testified that the AP&L tariffs are on file with the Commission; that the rate St. Vincent will be assessed under the proposed contract has also been filed as part of the public record; but that AP&L has always kept confidential the electricity usage of its individual customers. He testified that the purpose of its rate agreement with St. Vincent was to retain St. Vincent as a full requirement customer and that AP&L would lose $1,500,000.00 in revenue if St. Vincent begins co-generation. He also testified that AP&L would lose its ability to negotiate co-generation deferral contracts with its customers in the future if the AG's motion for disclosure is granted.

Larry Whitt testified that St. Vincent had decided to co-generate its own electrical needs until AP&L offered to enter into the present contract. He stated that, in order for AP&L to offer the special rate, it was necessary for St. Vincent to give AP&L considerable confidential information which he refused to do until AP&L advised him the Commission had authority to issue a protective order. He testified that St. Vincent's co-generation study, which the AG wants disclosed to the public, was developed at considerable cost and that energy usage is very detailed in the study. He stated that the data contained in the study could be manipulated to ascertain the costs of certain factors used in delivering a day of patient care and releasing this information would allow all entities competing with St. Vincent to have information not otherwise available to them. This would clearly put St. Vincent's competitors in a better pricing position than they are now. He further stated that he would have broken off negotiations with AP&L if he had been aware that this information could be disclosed to the public.

Staff agreed with AP&L and St. Vincent that the AG's motion for disclosure should be denied. Staff counsel Lee McCulloch testified regarding the concerns Staff would have if companies such as St. Vincent are forced to make public information the companies believe they are entitled to keep confidential. He testified that the loss of St. Vincent from the AP&L system would have an immediate and large impact on current AP&L customers

and that this possibility causes Staff grave concern for AP&L ratepayers. He stated that Staff's position is that the Commission should continue to proceed as it has in the past rather than put a chill factor in the mind of certain industries when they look at Arkansas as a place to provide jobs and make their products.

The only testimony the AG offered in support of its motion was that of John Watkins, a professor of law for the University of Arkansas. He testified that, in his opinion, a competitor could not use St. Vincent's current electrical usage to determine St. Vincent's costs of delivering a patient a day of care, and the fact that the Commission's decision in this proceeding may affect electric rates of other AP&L customers plainly points out the public's interest in disclosure.

On December 23, 1992, after finding the agreement to be in the public interest, the Commission entered Order No. 7, which approved the agreement between AP&L and St. Vincent, but made no finding on the AG's motion to lift the protective order. The AG petitioned the Commission for rehearing of Order No. 7 to obtain a ruling on his motion, but the petition was deemed denied after thirty days. The AG then filed his notice of appeal.

On appeal, the AG does not contest the Commission's approval of the incentive rate agreement between AP&L and St. Vincent but appeals the Commission's refusal to lift its protective order. He contends that the Commission erred in entering the protective order because it failed to make specific findings that the documents are nondisclosable based upon the information in the record and further because the entry of the protective order is not supported by substantial evidence. He argues that, under sections 23-2-421(a) and 23-2-316 and Commission Practice & Procedure Rule 13.05(b), it was necessary for the Commission to find either that it was in the public interest or necessary to protect proprietary facts or trade secrets of the utility in order to seal the documents. Because no such finding was made by the Commission, the AG asserts the issue must be remanded for such a determination.

Arkansas Code Annotated § 23-2-316 concerns records of the Commission and provides:

> (a) All facts and information, including all reports,

records, files, books, accounts, papers, and memoranda in the possession of the commission, shall be public and open to public inspection at all reasonable times.

(b)(1) Whenever the commission determines it to be necessary in the interest of the public or, as to proprietary facts or trade secrets, in the interest of the utility to withhold such facts and information from the public, the commission shall do so.

(2) The commission may take such action in the nature of, but not limited to, issuing protective orders, temporarily or permanently sealing records, or making other appropriate orders to prevent or otherwise limit public disclosure of facts and information.

Commission Rule 13.05(b) provides the procedure for entering a protective order:

A party seeking a protective order (movant) shall bear the burden of establishing by a preponderance of the evidence that disclosure of the information would have one or more of the following consequences:

(1) The movant could suffer material damage to its competitive or financial position;

(2) A trade secret of the movant would be revealed;

(3) The public interest would be impaired by release of the information;

(4) The information has no relevance to deciding the issues in the case at hand.

Section 23-2-421 concerns findings and orders of the Commission, and subsection (a) of this section requires that the Commission's decision be in sufficient detail to enable any court in which any action of the Commission is involved to determine the controverted question presented by the proceeding.

■ We agree with the AG that the Commission failed to make any factual determination in support of its issuance of a

protective order as required by § 23-2-421(a). In Order No. 1, establishing the protective order, the Commission merely recited what AP&L and St. Vincent alleged in their motion and that Staff had no objection to such an order. Assuming without deciding that Order No. 1 was sufficient under § 23-2-421(a) because at the time there was no dispute as to the entry of the protective order, it was not sufficient once the AG contested the protective order.

The Commission argues that its conclusion to issue a protective order is supported by substantial evidence as required by Ark. Code Ann. § 23-2-423(c)(3) (1987). On review, however, this court must determine, not whether the conclusions of the Commission are supported by substantial evidence, but whether its findings of fact are so supported. *See Arkansas Pub. Serv. Comm'n v. Continental Tel. Co.*, 262 Ark. 821, 829, 561 S.W.2d 645, 650 (1978). We must first know what the finding is before we can give it conclusive weight. *Id.; AT&T Communications of the Southwest, Inc.* v. *Arkansas Pub. Serv. Comm'n*, 40 Ark. App. 126, 131, 843 S.W.2d 855, 858 (1992). Courts cannot perform the reviewing functions assigned to them in the absence of adequate and complete findings by the Commission on all essential elements pertinent to the determination. *See Arkansas Pub. Serv. Comm. v. Continental Tel. Co.*, 262 Ark. at 829, 561 S.W.2d at 649.

The Commission states that the Commission's expertise, along with Staff's assertions and the testimony of the witnesses, provide sufficient reason for the issuance of the protective order. An argument similar to this was made without success in *Arkansas Public Service Commission* v. *Continental Telephone Co.*, 262 Ark. 821, 561 S.W.2d 645 (1978), where the supreme court responded:

> The commission has urged that the findings are sufficient because there is evidence from which it could reach the conclusions it stated. But it is not the function of the courts to evaluate the evidence, to draw inferences from it or to read its implications into the statement of the ultimate conclusion. The courts are not authorized under a statute like ours to make findings which should have been made by the commission.

262 Ark. at 830, 561 S.W.2d at 650 (citations omitted).

Our decision here is in agreement with other jurisdictions that also require their utility commissions to make findings sufficient for an adequate and meaningful review. See *State Utilities Commission* v. *AT&T Communications of Southern States, Inc.*, 321 N.C. 586, 364 S.E.2d 386 (1988), where the court held that failure of the commission to include all necessary findings of fact and details is an error of law and a basis for remand under North Carolina law because it frustrates appellate review. Courts cannot perform the reviewing function which the legislature has assigned to them in the absence of adequate findings; it must be possible for the reviewing court to measure the findings against the evidence from which they were educed. *Southwestern Bell Tel. Co.* v. *State Corp. Comm'n*, 192 Kan. 39, 386 P.2d 515, 524 (1963). In *Town of New Shoreham* v. *Rhode Island Public Utilities Commission*, 464 A.2d 730 (R.I. 1983), the Rhode Island Supreme Court stated:

> This court does not sit as a factfinder; our role is "to determine whether the commission's decision and order are lawful and reasonable and whether its findings are fairly and substantially supported by legal evidence and substantially specific to enable us to ascertain if the facts upon which they are premised afford a reasonable basis for the result reached." *Rhode Island Consumers' Council* v. *Smith*, 111 R.I. at 277, [302 A.2d 757, 762 (1973)]. However, if the commission fails to set forth sufficiently the findings and the evidentiary basis upon which it rests its decision, we shall not speculate thereon or search the record for supporting evidence or reasons, nor shall we decide what is proper. Instead, we shall remand the case in order to provide the commission an opportunity to fulfill its obligations in a supplementary or additional decision. *Id.* at 278, 302 A.2d at 763.

*Town of New Shoreham* v. *Rhode Island Pub. Util. Comm'n*, 464. A.2d at 732. See also *Petition of New England Tel. & Tel. Co.*, 115 Vt. 494, 66 A.2d 135 (1949), in which the Supreme Court of Vermont held that the requirement that the public service commission make its findings of fact imposes upon the commission the duty to sift the evidence and state the facts, and when the essential findings have not been made, the court is unable to act as factfinder but must instead remand the case for such findings.

Accordingly, we must reverse and remand for a decision based upon findings of fact so that a meaningful review of the Commission's decision can be made. Because we are remanding for adequate findings, we are unable to address the AG's second argument that the Commission's decision is not supported by substantial evidence.

AP&L argues that we should not decide this case because the issue of whether the Commission erred in entering the protective order is now moot. AP&L first notes that, although the AG maintains the protected information should be disclosed to the public, he has refused to review the information even though the Commission's order allows him to do so. AP&L also notes that the AG has not appealed the Commission's approval of the rate agreement between it and St. Vincent and, therefore, disclosure of the protected information will have no legal effect.

An issue is moot when it has no legal effect on an existing controversy. *Killam* v. *Texas Oil and Gas Corp.*, 303 Ark. 547, 556-57, 798 S.W.2d 419, 424 (1990). It is the duty of the court to decide actual controversies by a judgment which can be carried into effect and not give opinions upon abstract propositions or declare principles of law which cannot affect the matter in issue. *Netherton* v. *Baldor Electric Co.*, 232 Ark. 940, 942, 341 S.W.2d 57, 58 (1960).

We agree with AP&L that disclosure of the protected information in the case at bar cannot affect the outcome of the approval of the contract between AP&L and St. Vincent. Nevertheless, we are convinced that the issue of whether it is in the public interest to protect certain information in this type of proceeding is a question likely to be repeated in future cases. AP&L's witness Neal Jansonius testified that St. Vincent's contract is the seventh self-generation deferral contract that the Commission has been asked to approve since 1986. Staff witness Lee McCulloch testified that a specific rate contract will be filed with the Commission for an industry locating in Little Rock which will bring 500 jobs. He stated that, in order to attract the industry to Little Rock, the industry was given a special rate, which the Commission will be asked to approve, and was assured that the information would be kept confidential.

Of course, the issue of whether certain information in a particular proceeding before the Commission should be protected will depend on the facts of each case. Nevertheless, the method by which the Commission grants or denies a protective order is a question of public interest, and for that reason, we have chosen to address the AG's argument.

Although the appellate court normally decides only cases and controversies which will actually affect the rights of litigants; when an issue is subject to repetition and tends to expire before review can be had, the court may decide a moot issue. *Nathaniel* v. *Forrest City School Dist. No. 7*, 300 Ark. 513, 515, 780 S.W.2d 539, 540 (1989). *See also Colorado-Ute Elec.* v. *Public Utilities Comm'n of Colorado*, 760 P.2d 627, 633 (Colo. 1988), appeal dismissed, 489 U.S. 1061 (1989).

We therefore reverse and remand for findings consistent with this opinion.

ROGERS, J., concurs.

COOPER and MAYFIELD, JJ., dissent.

JUDITH ROGERS, Judge, concurring. I feel compelled to address the Attorney General's failure to review the protected material at issue in this case. The Commission in its order clearly acknowledged the Attorney General's right to review the material, yet the Attorney General, who is charged with representing and disseminating information to rate payers and advocating the lowest reasonable utility rates pursuant to Ark. Code Ann. § 23-4-305 (1987), just as clearly chose not to review that material. He also chose not to carefully peruse this data and decide which material should be made available to the public. It is conceivable that if all parties had reviewed this material, the Commission would have been aided in a more effective review and in making specific findings, and that the reversal of this appeal could have been avoided by the Attorney General taking this simple interim step.

I wish to make it clear that I recognize the difficulty that would be inherent in trying to separate the merits of a public utility appeal, such as this one, from the political climate from which the appeal may come. Nevertheless, courts are an inap-

propriate arena for solving most of these problems and it would be less costly and more efficient if we could address cases solely on their legal merits.

I must also point out that, although I agree with the majority that this Court cannot perform its reviewing function in the absence of adequate and complete findings by the Commission, remand of this appeal is a futile gesture. After undisputed evidence was presented to it, the Commission granted the protective order. The Commission then heard additional testimony before it denied the Attorney General's request to lift the protective order. Therefore, it cannot be argued that the Commission entered the protective order arbitrarily without any evidentiary foundation. The issue before this Court is not one in which we need detailed factual findings in order to be able to determine how the Commission arrived at its ruling. Rather, the finding needed here is whether the Commission found the evidence supported the entry of the protective order. The fact that the Commission did not articulate its findings does not diminish the order's clear implication that the Commission found such evidence to exist.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the majority's opinion because, first, I think the issue decided is, to me, clearly moot, and secondly, this Court is far too busy to issue advisory opinions on questions which are moot. The Attorney General has not appealed the Commission's approval of the incentive rate agreement between AP&L and St. Vincent, and therefore any action this Court takes can have no possible effect on the outcome of this case. A case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Frisby* v. *Strong School District*, 282 Ark. 81, 82, 666 S.W.2d 391, 392 (1984). This is such a case. Nevertheless, the majority has remanded this case for the Commission to make findings of fact as to whether the protective order should be lifted.

The majority acknowledges that it is this Court's duty to decide actual controversies that can be carried into effect. It justifies its ruling here, however, by stating the question of the appropriateness of a protective order is likely to arise in future proceedings. I agree that the Commission is likely to be faced with future requests for protective orders, in the case at bar, and it is

likewise true that we do sometimes render decisions despite the mootness of the issue when doing so might avert future litigation. *See Bynum* v. *Savage,* 312 Ark. 137, 847 S.W.2d 705 (1993). I fail to understand, however, how any decision of this Court can avoid future litigation surrounding these orders when the majority readily admits the issue of whether certain information in a particular proceeding should be protected will depend on the facts of each case. Under these circumstances, the special criteria favoring decision of moot issues are absent, and the case should therefore be dismissed. *Westark Christian Action Council* v. *Stodola,* 312 Ark. 249, 848 S.W.2d 935 (1993). Clearly, the only effect of this appeal is to cause this Court to waste valuable time on an issue which is moot.

For the foregoing reasons, I would dismiss.

MAYFIELD, J., joins in this dissent.