## ALLTEL ARKANSAS, INC. *v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 98-1362 19 S.W.3d 634

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered June 21, 2000

*Stephen B. Rowell; Friday, Eldredge & Clark*, by: *Kevin A. Crass* and *R. Christopher Lawson*, for appellant.

*Arthur H. Stunkel*, for appellee.

MARGARET MEADS, Judge. Alltel Arkansas, Inc., appeals a narrow issue that resulted from Order Nos. 6, 7, and 10 entered by the Arkansas Public Service Commission in Docket No. 97-419-U. In these orders, the Commission adopted the Administrative Law Judge's holding that a carrier's ability to reclassify its services from toll to local and thereby reduce its responsibility to the Arkansas Intrastate Carrier Common Line Pool is not a violation of the Telecommunications Regulatory Reform Act of 1997 (Act 77). Because we find that the Commission failed to provide sufficient detail to enable this court to determine how it arrived at this decision, we must reverse and remand for additional findings.

This appeal began with a petition filed by Alltel for clarification of the settlement mechanism with respect to the intraLATA carrier common line revenue requirements of the Arkansas Intrastate Carrier Common Line Pool (AICCLP). The AICCLP is defined by Ark. Code Ann. § 23-17-403(3) (Supp. 1997) as the unincorporated organization of the providers of Arkansas telecommunications services, authorized by the Commission, whose purpose is to manage billing, collection, and distribution of the incumbent local exchange carriers's intrastate toll common line service revenue requirements. Carrier Common Line (CCL) service refers to the use of an incumbent local exchange carrier's (ILEC's) common lines by a carrier to provide intrastate communications services to end users. In exchange for a carrier's use of an ILEC's local loop network for the origination and termination of toll calls, the carrier pays a non-traffic-sensitive access rate to the AICCLP, which collects the access charges from the various carriers and distributes them to the ILECs for reimbursement of their revenue requirements. All carriers that use an ILEC's local loop network to originate or terminate a toll call are assessed a CCL charge. The access rate is set by the Intrastate Flat Rate Carrier Common Line Service Tariff (Tariff) and is determined by obtaining the sum of the ILECs' intrastate CCL revenue requirements, any applicable Arkansas Universal Service Fund (AUSF) requirement, the direct expenses incurred by the AICCLP Administrator and staff, claims for adjustments to final revenue requirements, and the charges or credits approved by the Commission. See IFR CCL Tariff, 3rd Rev'd Sheet 7. Once this sum is computed, the AICCLP Administrator determines each individual carrier's CCL pool charge by apportioning the total intrastate CCL pool charges based on the percentage of each carrier's reported intrastate net retail billed minutes of use (RBMOU) relative to the total intrastate net RBMOU reported by all carriers. Prior to the dissolution of the Arkansas IntraLATA Toll Pool (AITP), the ILECs used the AITP to settle the CCL charges among themselves and the AITP Administrator reported the ILECs' combined RBMOU to the AICCLP Administrator. The IXCs (pure-interexchange carriers such as AT&T, MCI, and Sprint) reported their RBMOU directly to the AICCLP Administrator.

Because of the dissolution of the AITP, Alltel's petition contended that none of the ILECs were settling their intraLATA CCL

revenue requirements with the AICCLP. Alltel proposed that the "post-toll pooling ILECs" begin settling all of their intrastate CCL revenue requirements directly with the AICCLP Administrator by reporting their RBMOU to the AICCLP Administrator and that the IXCs continue to report their RBMOU to the AICCLP Administrator. On January 9, 1998, Docket No. 97-419-U was established by the Commission to address Alltel's petition, and it was consolidated with two other dockets, not relevant to this appeal, for hearing purposes. Intervention was granted to a number of ILECs and AT&T Communications of the Southwest, Inc. The general staff of the Commission (Staff) also participated in the docket.

At the hearing, Jack Redfern, Staff Manager of Regulatory Matters for Alltel, testified in support of Alltel's petition. He proposed that the proportionate share of the intrastate CCL revenue requirement that is borne by each carrier, ILEC or IXC, be based on the relationship of their total intrastate RBMOU reported to the AICCLP compared to total RBMOU reported by all carriers. Initially, he argued that the reported RBMOU, used to compute the carriers' CCL pool charges, should be frozen at their December 31, 1996, levels and that increases or decreases in growth of RBMOU after December 31, 1996, not be considered, since the intrastate CCL revenue requirements were frozen at their December 31, 1996, levels by section 4(e)(4)(D) of Act 77, Ark. Code Ann. § 23-17-404(e)(4)(D) (Supp. 1997). In his surrebuttal testimony, however, Redfern amended Alltel's proposal. He stated that other carriers' concerns that Alltel's proposal would keep new entrants from paying for the non-traffic-sensitive portion of the network are well-founded and appear to justify that the actual RBMOU should not be frozen. Redfern, however, continued to argue that the categories of service, which were reported prior to December 31, 1996, must be frozen. Gerald Shannon, Regulatory Planning Manager for GTE Service Corporation (GTE), concurred with Alltel's position, arguing that if SWBT were to reclassify some of its services from toll to local, then the proportion of payments to the AICCLP would change.

Larry Walther, Executive Director for Regulatory Matters for Southwestern Bell Telephone (SWBT), disagreed with Alltel and GTE. He testified that SWBT can reassign service between its exchanges from toll to local and thereby remove minutes of use

from the AICCLP. He testified that some optional calling plans are toll services but he considered the flat rate plans, like the plan that SWBT implemented between Little Rock and Benton, to be an extended area service (EAS) type plan and local and should not be included in the AICCLP. When asked whether SWBT has historically reported the minutes of use associated with optional calling plans to the AICCLP, Walther replied: "[I]n the negotiations to establish those plans, [we] agreed to do that. That was not our position. We had always contended that those were local plans, and by agreement at the time we implemented them when we were in the toll pool.... We agreed with the AITP members that we would report them to the AITP." (Transcript pp. 193-94.)

John Bethel, manager of the telecommunications section for Staff, testified that Staff supports the settlement of all intrastate CCL charges directly with the AICCLP but disagreed with Alltel's initial recommendation that the RBMOU reported to the AICCLP should be frozen at their December 31, 1996, levels. He stated that section 23-17-404(e)(4)(D) did not freeze the level of minutes; that freezing RBMOU would prevent carriers initiating intrastate service after December 31, 1996, from reporting RBMOU and paying intrastate CCL charges; and that the CCL charges associated with the RBMOU of carriers that were operating at December 31, 1996, and have since ceased operating would be unrecoverable. Bethel also testified that ILECs could initiate optional calling plans or reclassify RBMOU from toll to local or intrastate to interstate, pursuant to Ark. Code Ann. §§ 23-17-408(c) and 23-17-412(a) (Supp. 1997), stating that it appears that electing ILECs are now able to initiate new telecommunications services and reclassify traffic from toll to local or intrastate to interstate without prior Commission approval and thereby remove the associated RBMOU from the AICCLP. He also stated that the ILECs previously initiated EAS routes, which expanded the local call area of an exchange for an additional monthly charge, and that the traffic affected by the introduction of EAS has been reclassified from toll to local.

At the conclusion of the hearing, the Administrative Law Judge (ALJ) accepted briefs from the parties. On July 1, 1998, she handed down Order No. 6, in which she held that, "[i]n the absence of the AITP, it is consistent with Act 77 and the IFR CCL Service tariff to settle the intrastate AICCLP charges of all participants directly with the pool as advocated by Alltel, GTE, and Staff."

Order No. 6 at 26. No party has appealed this holding from Order No. 6. However, the ALJ additionally held: "The ability to reclassify services from toll to local and reduce responsibility for AICCLP charges may be anti-competitive but it does not appear to be in conflict with any provision of Act 77." Order No. 6 at 30–31. The ALJ concluded that Alltel's Petition for Clarification should be granted as amended by Staff in the testimony of John Bethel and directed the AICCLP Administrator to amend and file the IFR CCL Service Tariff in accordance with the Staff's Exhibit.

The Commission entered Order No. 7 in July 1998, which adopted as its own without modification Order No. 6 in Docket No. 97–419–U. Thereafter, various parties to the docket petitioned the Commission to rehear Order Nos. 6 and 7. Alltel and GTE asked the Commission to clarify that a carrier's determination to reclassify services from toll to local does not alter the carrier's obligation to continue to report the associated RBMOU to the AICCLP and pay the AICCLP charges for such RBMOU. Alltel also requested oral argument on this issue. The Commission granted Alltel's and GTE's petitions for rehearing and Alltel's oral argument request in Order No. 9.[1]

In its argument before the Commission, Alltel asserted that the RBMOU are part of the CCL Pool charges that section 27–17–404(e)(4)(D) requires to continue as effective. It noted that, prior to Order No. 6, ILECs were required to report their total RBMOU, which by definition included the ILECs' minutes of use for those revenues reported to the AITP, and, although the AITP no longer exists, the same types of minutes must continue to be reported, otherwise part of the RBMOU included in the IFR CCL Tariff will be eliminated. Alltel also reiterated its argument that allowing ILECs to cease reporting minutes is anti-competitive and discriminatory, because it allows a reclassifying carrier to pay less pool charges while it increases the other carriers' pool charges. GTE supported Alltel's argument, explaining that it did not dispute that electing carriers have the flexibility to implement new services but disagreed that the reclassified minutes no longer have to be reported to the AICCLP. It argued that, in order for the CCL pool charges to continue as effective on December 31, 1996, as required

---

[1] Order No. 9 also granted SWBT's petition for rehearing, but the findings challenged by SWBT are not relevant to this appeal.

by section 23-17-404(e)(4)(D), it is only logical that the formula by which they were computed will remain consistent throughout this period.

Staff argued before the Commission that recategorizing minutes from toll to local is consistent with the Commission's practices; that, at the time Act 77 was passed, the Commission had the jurisdiction to consider communities of interest and to allow the provision of EAS services; and that, when EAS was allowed, the associated minutes of use were no longer considered toll and were removed from the CCL pool. Staff explained that Act 77's stated purpose is to implement the national policy of opening the telecommunications market to competition on fair and equal terms and in order to be competitive with non-ILEC carriers, which can designate local calling areas and properly implement Act 77's requirements, any ILEC ought to be able to offer up optional calling services and remove the associated minutes from the AICCLP. SWBT agreed with Staff that electing companies have the authority to initiate new local services and to reclassify services from toll to local. It noted that Act 77 makes no mention of freezing RBMOU or a specific allocation of the CCL charges. It emphasized that the Tariff defines the AICCLP using the word "toll," which would not include local services.

On October 14, 1998, the Commission entered Order No. 10, which denied the petitions for rehearing of Alltel, GTE, and SWBT, without making any findings. Thereafter, Alltel filed its notice of appeal from Order No. 6 and the Commission's orders, arguing that the Commission failed to regularly pursue its authority as required by Ark. Code Ann. § 23-2-423(c)(4) (Supp. 1997) in adopting Order No. 6. It contends that Order No. 6's holding, that the ability to reclassify services from toll to local and thereby reduce responsibility for AICCLP charges does not appear to be in conflict with Act 77, is clearly erroneous.

Section 23-2-423(c)(4) and (5) defines this court's standard of review as determining whether the Commission's findings of fact are supported by substantial evidence, whether the Commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or the Constitutions of the State of Arkansas or the United States. *See Bryant v. Arkansas Pub. Serv. Comm'n*, 64 Ark. App. 303, 984 S.W.2d

61 (1998). This court has often stated that the Commission has broad discretion in exercising its regulatory authority, and courts may not pass upon the wisdom of the Commission's actions or say whether the Commission has appropriately exercised its discretion. *Id; Bryant v. Arkansas Pub. Serv. Comm'n*, 55 Ark. App. 125, 931 S.W.2d 795 (1996); *AT&T Communications of the S.W., Inc. v. Arkansas Pub. Serv. Comm'n*, 40 Ark. App. 126, 843 S.W.2d 855 (1992). Nevertheless, it is clearly for the courts to decide the questions of law involved and to direct the Commission where it has not pursued its authority in compliance with the statutes governing it or with the state and federal constitutions. *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 267 Ark. 550, 593 S.W.2d 434 (1980). In questions pertaining to the regular pursuit of its authority, the courts do have the power and duty to direct the Commission in the performance of its functions insofar as it may deem necessary to assure compliance by it with the statutes and constitutions. *Id.*

In support of its contention that Order No. 6 violates section 23-17-404(e)(4)(D), Alltel relies on the meaning of the word "charges" in section 23-17-404(e)(4)(D), which provides:

> Except as provided in this subdivision (D), the intrastate Carrier Common Line (CCL) Pool charges shall continue as effective on December 31, 1996. The commission is authorized to develop and implement, commencing three (3) years after February 4, 1997, a phase-in reduction of intrastate CCL pool charges until such charges are equivalent to the interstate CCL charges. Any reduction of intrastate CCL pool charges of incumbent local exchange carriers ordered by the commission shall provide for concurrent recovery of such revenue loss from the AUSF, basic local exchange rates, or a combination thereof.

Alltel maintains that the term "charges" that appears in this section refers to the pro rata charge that each carrier is billed by the AICCLP administrator and, because this section freezes the CCL charges for a minimum of three years, it also freezes the mechanism for determining the CCL charges. It cites two sections from the IFR CCL Tariff to support its position:

*3. General Description*

. . . .

The amount of the IRF CCL charges to the carriers shall be designed to recover the aggregate intrastate CCL revenue requirement. The CCL revenue requirement may include: 1) the sum of CCL revenue requirements in the intrastate jurisdiction for each LEC specified in Paragraph 6; 2) the direct expenses incurred by the AICCLP Administrator for billing and collecting the IRF CCL charge; and 3) other Commission ordered charges and credits. The AICCLP Administrator shall use the approved amounts until they are superseded by subsequent Commission order.

IFR CCL Tariff, 4th 5th Revised Sheet 4.

5. *Rate Regulations*

5.1 The AICCLP Administrator shall determine the amount to be billed obtaining the sum of:

— LEC's intrastate CCL revenue requirement specified in paragraph 6 following.

— Other charges or credits approved by the commission.

5.2 The AICCLP Administrator shall determine each carrier's IFR CCL charge by apportioning the intrastate CCL revenue requirement based on the percentage of each carrier's reported intrastate net RBMOU relative to the total intrastate net RBMOU reported by all carriers as specified in 4.1, 4.2, and 4.3 preceding . . . .

IFR CCL Tariff, 3rd Revised Sheet 7. Because the Tariff provides that the AICCLP Administrator shall determine the CCL charge by the reported RBMOU, Alltel concludes that section 23-17-404(e)(4)(D) requires that the types of RBMOU, which were reported December 31, 1996, must continue to be reported.

In addressing Alltel's argument that the word "charges" in section 23-17-404(e)(4)(D) refers to the individual charges the AICCLP Administrator bills to each carrier, the ALJ in Order No. 6 stated:

[Staff witness] Mr. Bethel stated that Alltel is mistaken in its attempts to limit the definition of AICCLP charges, citing to the AICCLP charges referenced in Ark. Code Ann. § 23-17-404(e)(4)(D) and more specifically defined in Paragraph 3 of the IFR CCL Service Tariff, contending that this language "include[s]

more than the sum of the ILECs' AICCLP revenue requirement identified in Paragraph 6 of the tariff." T. 302

Mr. Bethel recommended that each telecommunications provider's portion of the intrastate CCL charges be determined by using each carrier's net RBMOU relative to the total net RBMOU reported by all of the carriers, a process described in Paragraph 5.2 of the IFR CCL Service Tariff.

Order No. 6 at 20.

We are unable to distinguish this statement of Bethel's testimony from Alltel's argument. Bethel testified in his prepared testimony that each carrier's responsibility for the intrastate AICCLP charges should continue to be proportional to its RBMOU relative to the total RBMOU reported by all carriers. Although he testified that the level of RBMOU is not frozen by section 23-17-404(e)(4)(D), he acknowledged that freezing the revenue requirement at a point in time without freezing the associated traffic fails to recognize the relationship between those items. He explained that, when ILECs reclassify RBMOU from toll to local and no longer report those minutes to the AICCLP, the relative portion of the AICCLP charges paid by other pool participants increases.

The ALJ held that "§ 23-7-404(e)(4)(D) freezes the CCL pool charges but not the RBMOU," stating:

Alltel and GTE advocate that this section of Act 77 requires that the RBMOU should be frozen at the level reported in December, 1996, although the companies differ somewhat as to the calculation of the RBMOU. GTE and Alltel contend that it is necessary to freeze the RBMOU in order to prohibit ILECs electing "alternative regulation" from reclassifying certain services from toll to local, thereby reducing one ILECs portion of AICCLP charges and increasing the portion of AICCLP charges borne by other pool participants. As Staff points out, Ark. Code Ann. § 23-17-404(e)(4)(D) freezes the CCL pool charges, but not the RBMOU. Further, Staff witness Bethel pointed out that such a freeze "would prevent carriers initiating intrastate service after December 31, 1996, from reporting RBMOU and paying intrastate CCL charges" and "charges associated with the RBMOU of carriers that were operating at December 31, 1996, and have since ceased operating would be unrecoverable. T. 314. Carriers initiating service after December 31, 1996, would have a definite competitive advantage over other carriers in escaping any responsibility to

pay CCL charges thereby enabling them to offer lower rates under the RBMOU freeze proposed by Alltel and GTE.

Order No. 6 at 30. However, the ALJ's reliance on Bethel's testimony in support of her holding suggests that she did not consider Alltel's amended argument that the method for determining the RBMOU is frozen by section 23-17-404(e)(4)(D), not the actual RBMOU. Alltel witness Redfern testified in his surrebuttal testimony:

> Mr. Lovell points out that under Alltel's proposal, new entrants, after December 31 1996, would pay nothing for the non-traffic sensitive portion of the network. This was not Alltel's intent when it interpreted that it was necessary to freeze RBMOU at December 31, 1996 levels. However, Mr. Lovell's concern seems well founded and appears to justify that the actual RBMOU should not be frozen. In suggesting it was necessary to freeze the actual RBMOU Alltel is merely recommending how the Commission should implement the freeze in order to actually freeze the AICCLP charges as required by Act 77. While the Act provides little guidance to the Commission on this issue, it is clear that unless the method for determining the charges is also frozen, then the AICCLP charges will not be frozen. For example, unless the method is frozen then there is considerable opportunity for abuse that will clearly unfreeze the charges . . . .

> The AICCLP charges, effective December 31, 1996, are frozen by Act 77 for three years. In order for this freeze of such charges to be effective, the method and formula for calculation of those charges must be frozen. This means the revenue requirement, as reflected in the Intrastate Flat Rate Carrier Common Line Service Tariff, is frozen effective December 31, 1996 and the categories of service, on which RBMOU were reported to the AICCLP, must also be frozen at December 31, 1996. Normal increases or decreases in growth in the RBMOU of these categories of service, utilized at December 31, 1996, probably should continue to be reflected after December 31, 1996. However, such matters as RBMOU for categories of services, whether or not these services have been unilaterally reclassified by a carrier in its retail relationship with its customer after December 31, 1996, must continue to be reported to the AICCLP until the Act 77 freeze is over and until such time as the CCL revenue requirement is no longer frozen, or until the Commission has mandated a different mechanism for the ILECs to receive their intrastate CCL revenue

requirement, in order to avoid the potential abuse of the system shown in the above example.

(Transcript pp. 84-86.) Although Alltel clearly amended its argument in the hearing before the ALJ, Order No. 6 only addresses its original argument. Furthermore, the Commission also disregarded Alltel's amended argument in its appeal brief.

Alltel also argues that the Commission's interpretation of section 23-17-404(e)(4)(D) is not supported by Ark. Code Ann. § 23-17-408(c), which provides in part that "[a]n electing company may increase or decrease its rates for telecommunications services other than basic local exchange service and switched-access services and establish rates for new services by filing a tariff or a price list with the Commission." In his surrebuttal testimony, Staff witness Bethel relied on this section and Ark. Code Ann. § 23-17-412(a) (Supp. 1987)[2] in support of his statement that it appears electing ILECs are now able to initiate new telecommunications services and reclassify traffic from toll to local or intrastate to interstate without prior Commission approval. Alltel argues that, in reclassifying its optional calling plans, SWBT is not offering a new service and therefore section 23-17-408(c) is not relevant.

■ Although the ALJ noted Bethel's testimony in Order No. 6, no findings were made regarding it. Furthermore, we are unable to address Alltel's argument in regard to this section because it was not raised by Alltel in its petition for rehearing. Arkansas Code Annotated section 23-2-422(b) (Supp. 1997) provides that the application for rehearing shall set forth specifically the grounds upon which the application is based, and section 23-2-423(c)(2) provides that no objection to any order of the Commission shall be considered by the Court of Appeals unless the objection shall have been urged before the Commission in the application for rehearing.

For its final argument, Alltel contends that the Commission's holding conflicts with other provisions of Act 77. In Order No. 6, the ALJ held that the ability to reclassify minutes from toll to local

---

[2] This section provides in part that rural telephone companies, excluding tier one companies, that file a notice with the commission of an election to be regulated in accordance with the provisions of this section are authorized to determine and account for their respective revenues and expenses ... and shall be subject to regulation only in accordance with this section. . . .

and reduce responsibility to the AICCLP may be anti-competitive, but does not appear to conflict with any provision of Act 77. It was undisputed by the parties that the removal of RBMOU from the AICCLP increases the relative proportion of CCL charges paid by other pool participants while decreasing the proportion paid by the reclassifying carrier. Staff witness John Bethel testified:

> [T]he electing ILECs' ability to reclassify services from toll to local and remove the associated RBMOU from the AICCLP, allows those carriers to reduce their portion of the AICCLP charges and increase the portion of the AICCLP charges borne by the other pool participants. This may not promote competition, in that it may create a competitive advantage over other pool participants, such as the non-electing ILECs and the IXCs, that may not be able to move similar minutes from the AICCLP, and must continue to pay a portion of the AICCLP charges based upon those minutes.

(Transcript pp. 350-51.) In cross-examination, Bethel admitted that he perceived a conflict between the legislative intent described in sections 23-17-408(c) and -412(a), on which he relied in support of his contention that ILECs can initiate new services and not report the reclassified RBMOU to the AICCLP, and Ark. Code Ann. § 23-17-402 (Supp 1997), which provides in part:

> It is the intent of the General Assembly in enacting this subchapter to:

> (1) Provide for a system of regulation of telecommunications services, consistent with the federal act, that assists in implementing the national policy of opening the telecommunications market to competition on fair and equal terms, modifies outdated regulation, eliminates unnecessary regulation, and preserves and advances universal service.

> (2) Recognize that a telecommunications provider that serves high-cost rural areas or exchanges faces unique circumstances that require special consideration and funding to assist in preserving and promoting universal service.

■ Although the ALJ acknowledged in Order No. 6 that the ability to reclassify service from toll to local and reduce responsibility for AICCLP charges may be anti-competitive, she held that it did not appear to be in conflict with any provision of Act 77. This finding is not only contrary to Bethel's testimony, but it is also confusing in view of the fact that the ALJ relied so heavily upon

Bethel's testimony in Order No. 6. Without an explanation as to how the Commission resolved this conflict, we are not able to address this finding on appeal.

■ Arkansas Code Annotated section 23-2-421(a) (1987) requires that the Commission's decision be in sufficient detail to enable any court in which the action of the Commission is involved to determine the controverted question by the proceeding. *Bryant v. Arkansas Pub. Serv. Comm'n*, 64 Ark. App. 303, 984 S.W.2d 61 (1998). Courts cannot perform the reviewing functions assigned to them in the absence of adequate and complete findings by the Commission on all essential elements pertinent to a determination of the questions involved. *Id*; *see also Bryant v. Arkansas Pub. Serv. Comm'n*, 62 Ark. App. 154, 969 S.W.2d 203 (1998). When the Commission fails to set forth sufficiently the findings and the evidentiary basis upon which it rests its decision, this court will not speculate thereon or search the record for supporting evidence or reasons, nor shall we decide what is proper; instead, this court shall remand the case in order to provide the Commission an opportunity to fulfill its obligations in a supplementary or additional decision. *Id*; *see also Bryant v. Arkansas Pub. Serv. Comm'n*, 45 Ark. App. 56, 871 S. W.2d 414 (1994).

■ The Commission gives several reasons for affirming its decision on appeal. We find none of them dispositive. The Commission first states that it determined that Alltel's proposals were contrary to Act 77 because Act 77 requires fair and equal treatment of all carriers. It contends that, since other carriers are allowed to offer local calling plans, freezing the minutes reported for only ILECs would result in unfair and unequal treatment of ILECs. This finding was not made in Order No. 6 or the subsequent Commission orders. Furthermore, no evidence was presented to support such a determination. Although Staff's counsel argued before the Commission that other carriers, particularly cellular carriers, have the ability to offer local calling plans and reclassify minutes, it is well settled that arguments of counsel are not evidence. *Wright v. State*, 67 Ark. App. 365, 1 S.W.3d 41 (1999); *Johnson v. State*, 326 Ark. 430, 934 S.W.2d 179 (1996).

The Commission also contends that a known application of the "freeze" was provided in Commission Order No. 49 of Docket No. 86-159-U, which was entered March 8, 1996, approximately

one year prior to the adoption of Act 77. The Commission states that this order was entered to comply with the directives of the House and Senate Interim Committees on Insurance and Commerce of the Arkansas General Assembly and the Committees' Telecommunications Subcommittee and, pursuant to that directive, it froze the tariffs in place on March 8, 1996, but it did not freeze RBMOU reportable by any carrier. It concludes that, in view of the fact that the General Assembly directed the Commission to take no action affecting the general level of access charges and it complied by freezing the AICCLP revenue requirement but not the RBMOU, it must be presumed that the General Assembly was aware of the Commission's interpretation of the "freeze" and would have specified in Act 77 that the RBMOU were also to be frozen if that was their intent.

■ We are unable to consider this explanation because there is no evidence in the record to support it, nor was it given in Order No. 6 or the subsequent orders in support of the Commission's holding. Although the ALJ did refer to Order No. 49 and the legislative committees' directives in Order No. 6, she did not explain how Order No. 49 or those directives were relevant to her holding.

The Commission also argues that it is clear that, prior to the adoption of Act 77, ILECs have reclassified traffic from toll to local and discontinued reporting the associated RBMOU to the AICCLP. In support of this statement, the Commission cites the testimony of Staff witness Bethel; however, Bethel did not testify that the associated minutes from a reclassified service were not reported to the AICCLP. He actually stated: "[T]he ILECs have, with Commission approval, initiated extended area service (EAS) routes in the past (e.g., Marion to West Memphis).... The traffic affected by the introduction of EAS has been reclassified from toll to local." (Transcript p. 351.)

■ It is clear to us from the evidence presented at the hearing and the arguments of counsel both before the Commission and this court that there is a dispute as to whether reclassified minutes of use were required to be reported to the AICCLP or AITP prior to Act 77. In his surrebuttal testimony, Staff witness Bethel stated that SWBT witness Eldon Peters incorrectly argued that it was unfair for ILECs to report the RBMOU associated with intraILEC-inter-

exchange traffic to the AICCLP, stating that this traffic has been reported to the AICCLP and should continue to be. SWBT witness Walther testified on cross–examination that SWBT can reassign services from toll to local and thereby remove minutes of use from the AICCLP, but also admitted that when SWBT implemented its optional calling plan, it agreed to report those minutes of use to the AITP. Even in the arguments before this court it was unclear whether reclassified RBMOU were reported to the pool. Without a finding on this controverted issue, we are unable to decide this appeal. In trying to resolve this issue, we further note that nowhere in the orders under review or the record can we find an explanation of the differences between optional, mandatory, and extended area service calling plans. The evidence suggests that EAS calling plans existed prior to Act 77; optional calling plans were coined by SWBT after the passage of Act 77, and there is also a reference in a Commission argument to mandatory calling plans. Especially in appeals from the Commission where we rely on its expertise, we must have adequate explanations of its decisions and the facts supporting those decisions and not have to resort to speculation.

 Because of the reasons discussed in this opinion, we must reverse and remand those portions of Order No. 6 and the Commission's orders that adopted the holding of the ALJ here in dispute, with directions to render adequate findings so that a meaningful review of that decision can be made.

Reversed and remanded.

PITTMAN, HART, JENNINGS, CRABTREE, and ROAF, JJ., agree.