Robert D. BRANDON and Carl L. Brooks *v.*
ARKANSAS WESTERN GAS COMPANY

CA 00-1074 61 S.W.3d 193

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 5, 2001
[Petition for rehearing denied January 9, 2002.]

*The Evans Law Firm,* by: *Marshall Dale Evans,* for appellants.

*Everett law Firm,* by: *John C. Everett* and *Jason H. Wales;* and *Jeffrey L. Dangeau,* General Counsel, for appellee Arkansas Western Gas Company.

*Gilbert L. Glover*, for appellee Arkansas Public Service Commission.

ANDREE LAYTON ROAF, Judge. This is the second appeal to this court of an order of the Public Service Commission in this proceeding, Docket No. 93-344-C, which was filed by gas customers in Fayetteville seeking refunds. The controlling question in this appeal is whether the Commission erred in holding that a previous settlement agreement entered in a separate proceeding was *res judicata* and barred this claim for refunds. We affirm the Commission's decision.

## Procedural History

In 1978, appellee Arkansas Western Gas Company (hereafter "AWG") entered into a long-term contract (Contract 59) to purchase gas from a sister corporation, SEECO, Inc. AWG and SEECO are subsidiaries of Southwestern Energy Company; the same individual served as the chief executive officer for all three companies. In 1990, AWG filed an application with the Commission for approval of a general change in its rates and tariffs. The Commission approved the overall revenue requirement and associated tariffs but expressed concern about AWG's gas-purchasing practices, its transactions with SEECO, its allocation of gas costs, and its transportation practices. The Commission then established a proceeding on February 14, 1992, to address these issues, Docket No. 92-028-U, in Order No. 1, which initiated that docket. In Order No. 41 in Docket No. 92-028-U, the Commission found on November 29, 1993, that the relationship between SEECO and AWG was fraught with conflicts of interest and that the price paid by AWG under Contract 59 was in violation of Ark. Code Ann. § 23-15-103 (1987), the least-cost-gas-purchasing statute. On October 31, 1994, the parties to Docket No. 92-028-U, AWG, SEECO, the Commission's Staff, the Arkansas Attorney General, through his Consumer Utilities Rate Advocacy Division, and Northwest Arkansas Gas Consumers (hereafter "NWAGC"), entered into a stipulation and agreement amending Contract 59 to reflect the Commission's findings in Order No. 41. The settlement agreement specifically provided that "[t]he parties to this Stipulation and Agreement agree not to seek refunds of costs incurred by AWG under Contract 59 prior to July 1, 1994." After a public hearing on the settlement, the Commission approved the settlement agreement in Order No. 52 on January 5, 1995, and closed that docket in Order No. 53.

While Docket No. 92-028-U was still pending, on December 3, 1993, five days after the entry of Order No. 41, appellants Robert Brandon and Carl Brooks, on behalf of themselves and "all ratepayers similarly situated," filed a complaint in Docket No. 93-344-C with the Commission. Appellants did not intervene in Docket No. 92-028-U. In their complaint, appellants requested that the Commission order AWG to refund to its Arkansas ratepayers the rates that it had collected under Contract 59 with its sister company, SEECO, in violation of the least-cost-gas-purchasing statute. Appellants noted that, in an ongoing proceeding, Docket No. 92-028-U, the Commission had held (in Order No. 41) that the gas price charged by AWG violated section 23-15-103's requirement that it purchase gas from the lowest and most advantageous market and that no request for a refund had yet been made in that proceeding. Appellants requested that the Commission order AWG to refund an amount equal to $14 million per year since 1978 and award them their costs and attorney's fees under the common-fund doctrine.

In its answer, AWG stated that the Commission had previously determined that it would be inappropriate to make refunds regarding Contract 59 and raised the affirmative defense of *res judicata*. On December 23, 1993, AWG responded to a complaint by Georgia Brooks, Mark Pryor, and Claudia Williams to intervene in appellants' action. In its response, AWG asserted that "[t]he Commission has previously determined that it would be inappropriate to make refunds based on the Commission's findings regarding Contract 59" and again raised the affirmative defense of *res judicata*. In a July 18, 1997, response to a petition for intervention by Mid-Con Manufacturing, Inc., AWG stated that it would, in the near future, file a motion to dismiss the proceeding based on the stipulation and agreement entered in Docket No. 92-028-U nearly three years earlier in which the parties representing appellants' and the intervenors' interests had irrevocably waived the right to seek refunds. The Commission ordered Mid-Con's petition to be held in abeyance "pending further consideration. . . ."

In Order No. 4, entered July 30, 1997, the Commission denied appellants permission to act on behalf of other unnamed ratepayers and held that it did not have the power to award appellants attorney's fees from a common fund created by Commission-ordered refunds. Appellants appealed from that order to this court. In *Brandon v. Arkansas Public Service Commission*, 67 Ark. App. 140, 992 S.W.2d 834 (1999), we reversed the Commission's decision on the class-action issue and affirmed its refusal to award attorney's fees to

appellants. We held that the legislature's grant of authority to the Commission is clearly broad enough to allow it to hear a complaint brought as a class action. We reversed and remanded on that issue with directions to the Commission to determine whether appellants' action meets all of the prerequisites and necessary criteria as may be established by the Commission to qualify as a maintainable class action. We emphasized that we were not holding that the Commission must allow appellants' complaint to proceed as a class action and stressed that whether this action qualified for class certification was left to the broad discretion of the Commission. We found ourselves constrained by the statutory scheme and the holdings of the supreme court to hold that the Commission was without authority to award attorney's fees under the common-fund doctrine.

After this action was remanded in part to the Commission, AWG filed a motion for summary judgment, asserting that the October 31, 1994, stipulation and agreement approved by the Commission in Docket No. 92-028-U was *res judicata* and barred this proceeding for refunds. In support of its motion, AWG attached to its brief copies of the settlement agreement and Order Nos. 52 and 53 in Docket No. 92-028-U. According to AWG, the Attorney General represented appellants in Docket No. 92-028-U and appellants were bound by the settlement, to which he had agreed, that had been entered in that docket. *See* Ark. Code Ann. § 23-4-305 (1987), which provides that the Attorney General represents "the state, its subdivisions and all classes of Arkansas utility rate payers." AWG asserted that, in Docket No. 92-028-U, the Commission had investigated facts back to 1978, received evidence from witnesses under trial-like procedures, found AWG to be in violation of the least-cost-gas-purchasing statute, and approved a settlement that compromised an alleged liability dating back to 1978. AWG pointed out that the Attorney General could have requested a refund on behalf of the ratepayers but did not; instead, he agreed to the settlement, which expressly provided that no refunds would be made.

In response, appellants argued that AWG had waived its defense of *res judicata* by failing to object to the fact that two proceedings had been concurrently pending on this cause of action and by failing to move for their consolidation. Appellants argued that, by failing to timely move for consolidation of the two pending actions, AWG waived any possible objection it might have had to the splitting of the cause of action.

In Order No. 5, the Commission held that appellants' complaint was barred by the principle of *res judicata*. The Commission found that Docket No. 92-028-U had been contested vigorously in good faith by all parties, including the Attorney General, who represented all ratepayers:

> The parties, including the AG, agreed that there would be no refunds paid as a result of gas purchased from SEECO, Inc. under Contract 59. The AG made an informed and calculated decision to enter into the Settlement on behalf of AWG's ratepayers after exhaustive discovery and a thorough evaluation of the facts of the case. The class of plaintiffs which Complainants now purport to represent (and Complainants themselves) are bound by the terms of the Settlement and they cannot seek a refund in direct violation of the terms of the Settlement agreement which was negotiated by and entered into on their behalf by the AG. The ratepayers have already received a fair hearing before the Commission on the issue of AWG's gas purchases under Contract 59. *Res judicata* bars them from drawing the same controversy into issue a second time in an effort to undo the very settlement agreement the AG entered into on their behalf with AWG and which the AG considered to be "just and reasonable for all of AWG's ratepayers."

The Commission also found that, because appellants were barred from proceeding individually, they were not entitled to class certification.

In their petition for rehearing, appellants argued that the Commission had erred in failing to apply an exception to the principle of *res judicata*. They contended that AWG had waived its *res judicata* defense by failing to timely object to the splitting of the cause of action based on AWG's gas-purchasing policies. In Order No. 6, the Commission found appellants' application for rehearing to be without merit.

On appeal to this court, appellants admit that the Commission correctly expressed the principle of *res judicata*. They argue, however, that (1) AWG waived its objection to the splitting of the cause of action in two contemporaneous proceedings; (2) the Commission made the splitting of the cause of action necessary because it created a formal barrier preventing appellants' claim for refunds from being heard in Docket No. 92-028-U; and (3) the Commission erred in denying class certification.

## Standard of Review

■ ■ Our standard of review of appeals from the Public Service Commission is limited by the provisions of Ark. Code Ann. § 23-2-423(c) (Supp. 2001); we are to determine whether the Commission's findings of fact are supported by substantial evidence, whether the Commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or the constitutions of the State of Arkansas or the United States. *Bryant v. Arkansas Pub. Serv. Comm'n*, 46 Ark. App. 88, 877 S.W.2d 594 (1994). If an order of the Commission is supported by substantial evidence and is neither unjust, arbitrary, unreasonable, unlawful, nor discriminatory, then we must affirm the Commission's action. *Id.* Nevertheless, it is clearly for the courts to decide the questions of law involved and to direct the Commission where it has not pursued its authority in compliance with the statutes governing it or with the state and federal constitutions. *Alltel Ark., Inc. v. Arkansas Pub. Serv. Comm'n*, 70 Ark. App. 421, 19 S.W.3d 634 (2000). In questions pertaining to the regular pursuit of its authority, the courts do have the power and duty to direct the Commission in the performance of its functions insofar as necessary to assure compliance by it with the statutes and constitutions. *Id.*

■ ■ In Order No. 5, the Commission stated that it has authority to summarily dispose of a complaint if there are no genuine issues of material fact and if all questions to be decided are ones of law. Therefore, the principles applicable to motions for summary judgment filed pursuant to Ark. R. Civ. P. 56 may be used as guidance. *See Brandon v. Arkansas Pub. Serv. Comm'n, supra.* Summary judgment should be granted only when it is clear that there are no disputed issues of material fact. *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997).

## Administrative Res Judicata

■ ■ The purpose of the *res judicata* doctrine is to put an end to litigation by preventing a party who had one fair trial on a matter from relitigating the matter a second time. *Moon v. Marquez*, 338 Ark. 636, 999 S.W.2d 678 (1999). Under the claim-preclusion aspect of the doctrine of *res judicata*, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or

his privies on the same claim or cause of action. *Coleman's Serv. Ctr., Inc. v. Federal Deposit Ins. Corp.*, 55 Ark. App. 275, 935 S.W.2d 289 (1996). When a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* The key question regarding the application of *res judicata* is whether the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *White v. Gregg Agric. Enters.*, 72 Ark. App. 309, 37 S.W.3d 649 (2001). *Res judicata* will apply to a settlement agreement after it is approved by the court and the case is dismissed with prejudice. *Russell v. Nekoosa Papers, Inc.*, 261 Ark. 79-B, 547 S.W.2d 409 (1977).

■ A person having only a single cause of action is usually not permitted to split the cause of action and maintain more than one suit for different parts of the action; if this rule is violated, it is held that the adjudication reached on the first action is, under the doctrine of *res judicata*, a bar to the maintenance of the second suit. *Coleman's Serv. Ctr., Inc. v. Federal Deposit Ins. Corp., supra.* In his treatise, *Arkansas Civil Practice and Procedure* § 3-7 (1993), Justice David Newbern explained that "[t]he purposes underlying this rule are to protect those against whom split causes of action would be levied from having to defend twice and to protect court dockets from unnecessary burdens." *See U.S. Fidelity & Guar. Co. v. Glass*, 261 Ark. 45, 245 S.W.2d 924 (1977).

■■ There is no dispute that Docket Nos. 92-028-U and 93-344-C involve the same cause of action arising from AWG's gas-purchasing practices under Contract 59. It is also well established that the Commission acted in a quasi-judicial manner in Docket Nos. 92-028-U and 93-344-C. *See* Ark. Code Ann. §§ 23-3-118 and 23-3-119 (1987). When an administrative board acts judicially or quasi-judicially, its decision may be *res judicata* in a second proceeding involving the same question. *Hamilton v. Arkansas Pollution Control & Ecology Comm'n*, 333 Ark. 370, 969 S.W.2d 653 (1998); *Arkansas Dep't of Human Servs. v. Arkansas Child Care Consultants, Inc.*, 318 Ark. 821, 889 S.W.2d 24 (1994); *Bockman v. Arkansas State Med. Bd.*, 229 Ark. 143, 313 S.W.2d 826 (1958); *Perry v. Leisure Lodges, Inc.*, 19 Ark. App. 143, 718 S.W.2d 114 (1986); *Rainbolt v. Everett*, 6 Ark. App. 204, 639 S.W.2d 532 (1982). Administrative *res judicata* is utilized to prevent collateral attacks on administrative agency decisions and to protect successful parties from duplicative proceedings. *Fuchs v. Moore*, 589 N.W.2d 902 (N.D. 1999). Application of the doctrine is especially appropriate to

bar new proceedings when an agency has conducted a trial-type hearing, made findings, and applied the law. *Id.* In quasi-judicial administrative proceedings, *res judicata* has been applied to bar matters within the issues that might have been, but were not, litigated in an earlier action. *See Andrews v. Gross & Janes Tie Co.*, 214 Ark. 210, 216 S.W.2d 386 (1948); *Johnson v. Director of Labor*, 10 Ark. App. 24, 661 S.W.2d 401 (1983).

### Exceptions to Res Judicata
### Argued by Appellants

Appellants rely upon the following exceptions to the claim preclusion aspect of *res judicata* that are expressed in the *Restatement (Second) of Judgments* § 26 (1982) as follows:

(1) When any of the following circumstances exists, the general rule . . . does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

. . . .

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief. . . .

Appellants assert that AWG waived its objection to the splitting of appellants' claim by failing to assert in a responsive pleading or motion, as required by Arkansas Rule of Civil Procedure 12(b)(8), that another action between the same parties arising out of the same transaction or occurrence was pending. According to Rule 12(b)(8), when a suit is brought while another suit is pending between the same parties concerning the same subject matter, the trial court where the second suit is brought has no choice but to dismiss the second suit. *Mark Twain Life Ins. Corp. v. Cory*, 283 Ark. 55, 670 S.W.2d 809 (1984). Appellants contend that,

under Rule 12(h), AWG waived this defense and, therefore, the Commission erred in applying the principle of *res judicata*.

Some courts have held that a defendant can waive the benefit of the rule against the splitting of a cause of action by waiting until one of two suits goes to judgment before raising the objection to the splitting of the cause of action in the suit still pending. *See Todd v. Cent. Petroleum Co.*, 155 Kan. 249, 124 P.2d 704 (1942); *Cassidy v. Berkovitz*, 169 Ky. 785, 185 S.W. 129 (1916). *See also Aikens v. Schmidt*, 329 N.J. Super. 335, 747 A.2d 824 (2000).

In the first appeal of this action, we noted our increasing inclination to apply the Rules of Civil Procedure to administrative actions when they can provide appropriate guidance.[1] That decision, however, did not require the Commission to follow the Rules of Civil Procedure. Therefore, the Commission and this court may look to Rule 12 for guidance but are not required to do so.

In any event, whether Rule 12 applies to this question is not controlling, because a waiver can occur without regard to the Rules of Civil Procedure. A waiver may occur when one, with full knowledge of material facts, does something that is inconsistent with the right or his intention to rely upon that right. *Moore v. Pulaski County Special Sch. Dist.*, 73 Ark. App. 366, 43 S.W.3d 204 (2001).

It is clear to us that AWG did not waive its objection to defending appellants' claim for refunds in Docket No. 93-344-C while Docket No. 92-028-U remained open. Although AWG did not expressly state that another proceeding or action was pending, it did raise the affirmative defense of *res judicata* in its answer and stated that the Commission had previously determined that it would be inappropriate to make refunds regarding Contract 59. Further, AWG responded in the same fashion to the 1993 complaint in intervention. In its 1997 response to a separate petition for intervention, AWG stated that it would file a motion to dismiss based on the settlement agreement entered in Docket No. 92-028-U.

---

[1] *See Bryant v. Arkansas Pub. Serv. Comm'n*, 53 Ark. App. 114, 919 S.W.2d 522 (1996) (following Ark. R. Civ. P. 8(a)(1) and 12(b)(6) in conjunction with Rule 10.02(c) of the Commission's Rules of Practice and Procedure); *Second Injury Fund v. Mid-State Constr. Co.*, 16 Ark. App. 169, 698 S.W.2d 804 (1985) (taking guidance from Ark. R. Civ. P. 20).

### Whether Appellants Were Given an
### Opportunity to Litigate the Issue of Refunds

 Citing section 26(1)(c) of the *Restatement (Second) of Judgments* (quoted above), appellants also argue that the Commission created barriers to the seeking of refunds in Docket No. 92–028-U. The doctrine of *res judicata* does not bar a subsequent action where, in an earlier action, a party was actually prohibited from asserting a claim. *Cater v. Cater*, 311 Ark. 627, 846 S.W.2d 173 (1993); *Coleman's Serv. Ctr., Inc. v. Federal Deposit Ins. Corp., supra.*

Therefore, the controlling question in this appeal is whether appellants had a full and fair opportunity to litigate their claim for refunds in Docket No. 92–028-U. According to appellants, the Commission limited Docket No. 92–028-U to prospective relief only and foreclosed consideration of the possibility of refunds. In Order Nos. 1 and 41 in that docket, the Commission limited that proceeding so as to exclude refunds as an issue. In Order No. 1, the Commission stated: "In Docket No. 92–028-U, the gas purchasing practices, affiliate transactions, gas costs and gas cost allocation issues with regard to both the AWG and ANG Divisions shall be addressed on a prospective basis only." Order No. 1 also contains the following statement: "The scope of Docket No. 92–028-U shall be as set forth hereinabove and shall be prospective in application." In Order No. 41, the Commission further stated:

> The Commission will not rule on the retroactive pricing issues addressed by the parties as refunds are not an issue in this Docket. As stated in Order No. 1 of this Docket, AWG's gas purchasing practices, affiliate transactions, gas costs and gas cost allocation issues with regard to both the AWG and ANG divisions are being addressed on a prospective basis only.

The Commission, however, found in Order No. 5, from which this appeal has been taken, that the previous proceeding was "vigorously contested" by all parties and that the Attorney General made an informed decision after full consideration in that proceeding to compromise any claim for refunds. The Commission also said in Order No. 5 that the basis for the settlement agreement's provision that the parties would not seek refunds was explained during the hearing on the settlement agreement held on December 5, 1994. The Commission stated:

The primary issue in Docket No. 92-028-U was AWG's compliance with Ark. Code Ann. § 23-15-103. The Commission investigated facts dating back to 1978, received evidence from witnesses under trial-like procedures, interpreted the statute, found AWG to be in violation of the statute, and approved a settlement that compromised an alleged resulting liability that had allegedly accrued since 1978. . . . The AG made an informed and calculated decision to enter into the Settlement on behalf of AWG's ratepayers after exhaustive discovery and a thorough evaluation of the facts of the case.

The Commission stated in Order No. 52 in Docket No. 92-028-U that a public hearing for the purpose of considering the settlement agreement was held on December 5, 1994, at which testimony in support of the agreement was presented; that AWG presented the testimony of Stanley D. Green and Charles V. Stevens, and the testimony of Robert D. Booth was presented on behalf of the Commission's Staff; that the Attorney General adopted the testimony of Mr. Booth in support of the agreement; that SEECO stated that the testimony presented by Staff and AWG adequately addressed the issues; and that NWAGC offered no testimony and took no position regarding the agreement. The Commission stated: "No party offered any objection to the Stipulation. Although invited to do so, no member of the general public offered public comments regarding the Stipulation."

▉▉ ▉▉ In quasi-judicial administrative proceedings, there must have been a full and fair opportunity to contest the decision later argued to be *res judicata*. 46 AM. JUR. 2D *Judgments* § 580 (1994). *See also Campbell v. Arkansas Dep't of Correction*, 155 F.3d 950 (8th Cir. 1998). According to the *Restatement (Second) of Judgments* § 83(2) (1982), an adjudicative determination by an administrative tribunal is conclusive under the rules of *res judicata* only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:

(a) Adequate notice to persons who are to be bound by the adjudication, as stated in § 2;

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

Appellants do not argue that they were not parties, through the Attorney General's representation, to Docket No. 92-028-U. *See* Ark. Code Ann. § 23-4-305 (1987). Appellants also do not deny that the Attorney General participated in the settlement and appeared at the public hearing on the settlement agreement's provisions. Additionally, appellants do not dispute the fact that they, along with other members of the public, could have appeared at the hearing and objected to the terms of the settlement agreement but did not do so. It is, therefore, clear to us that appellants had a full and fair opportunity to litigate the issue of refunds in Docket No. 92-028-U before the settlement agreement was approved and entered. Accordingly, we hold that the Commission did not err in holding that the settlement agreement entered in Docket No. 92-028-U was *res judicata*.

## Class Certification

Appellants also argue that the Commission erred in dismissing this proceeding before addressing the question of class certification. They point out that they have not yet petitioned for class certification and argue that, under Rule 23 of the Arkansas Rules of Civil Procedure, the Commission should have considered whether class certification was appropriate before addressing the merits of the case. Rule 23(b) provides that, as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained and that such an order may be altered or amended before the decision of the action on the merits.

In the first appeal in this proceeding, we held that, although Rule 23 does not govern proceedings before the Commission, the legislature had intended in Arkansas Code Annotated § 23-2-301 (1987) to give the Commission the authority to hear class actions where it may be "necessary or expedient" in the exercise of its power and jurisdiction or in the discharge of its duty. We explained:

> In conclusion, we hold that the legislature's grant of authority to the Commission is clearly broad enough to allow it to hear a complaint brought as a class action. We are cognizant of the fact that this decision may to some degree be regarded as precedent, but the topic behind it is not novel. It comports with judicial economy and balances consumers' ability to seek review with the utilities' ability to alter rates. The legislative intent bolsters this idea, and the economy of scale that is evident in utility rate-making is furthered by this decision.
>
> We reverse and remand on this issue with directions to the Commission to determine whether appellants' action meets all of the prerequisites and necessary criteria as may be established by the Commission to qualify as a maintainable class action. In doing so, we emphasize that we are not holding by this opinion that the Commission must allow appellants' complaint to proceed as a class action. Our holding is expressly limited to our finding that the Commission has the authority to hear a class action. Whether appellants' action qualifies for class certification is left to the broad discretion of the Commission.

*Brandon v. Arkansas Pub. Serv. Comm'n*, 67 Ark. App. at 152, 992 S.W.2d at 841.

In cases controlled by the Rules of Civil Procedure, the answer is clear that class-certification issues must be addressed before the merits of the case. Citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), the Arkansas Supreme Court stated in *Farm Bureau Mutual Insurance Co. of Arkansas, Inc. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996), that for purposes of Rule 23, it is totally immaterial whether a complaint will succeed on the merits or even if it states a cause of action. In *Fraley v. Williams Ford Tractor & Equipment Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999), the supreme court held that a trial court had committed error in delving into the merits of affirmative defenses at the class-certification stage of a proceeding. *See also Advance America v. Garrett*, 344 Ark. 75, 40 S.W.3d 239 (2001); *Mega Life and Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997).

██ ██ Because the Commission is not bound to follow the Rules of Civil Procedure, however, it was not required to first address the class-certification issue. Indeed, it would be pointless to address the question of class certification because it is clear that *res judicata* bars appellants' claim. With few exceptions, we will not address moot issues. *Coleman's Serv. Ctr., Inc. v. Federal Deposit Ins. Corp., supra.* It is the duty of the court to decide actual controversies by a judgment that can be carried into effect and not give opinions upon abstract propositions or declare principles of law that cannot affect the matter in issue. *Bryant v. Arkansas Pub. Serv. Comm'n*, 45 Ark. App. 56, 871 S.W.2d 414 (1994).

Affirmed.

STROUD, C.J., and PITTMAN, JENNINGS, BIRD, and GRIFFEN, JJ., agree.